I. Scott Bogatz
Nevada Bar No. 3367
Kerry E. Kleiman
Nevada Bar No. 14071
REID RUBINSTEIN & BOGATZ
Bank of America Plaza
300 South 4th Street, Suite 830
Las Vegas, NV 89101
Telephone:  (702) 776-7000
Facsimile:  (702) 776-7900
sbogatz@rrblf.com
kkleiman@rrblf.com

Bryan A. Merryman (*Pro Hac Vice*)
Catherine Simonsen (*Pro Hac Vice*)
WHITE & CASE LLP
555 S. Flower Street, Suite 2700
Los Angeles, CA  90071-2433
Telephone:  (213) 620-7700
Facsimile:  (213) 452-2329
bmerryman@whitecase.com
catherine.simonsen@whitecase.com

Claire DeLelle (*Pro Hac Vice*)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
Telephone:  (202) 626-3600
Facsimile:  (202) 639-9355
claire.delelle@whitecase.com

*Attorneys for Plaintiff*
*V5 Technologies, LLC, d/b/a Cobalt Data Centers*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| V5 TECHNOLOGIES, LLC, d/b/a COBALT DATA CENTERS,<br><br>Plaintiff,<br><br>v.<br><br>SWITCH, LTD., a Nevada limited company; SWITCH BUSINESS SOLUTIONS, LLC, a Nevada limited liability company; SWITCH COMMUNICATIONS GROUP L.L.C., a Nevada limited liability company; SWITCH, INC., a Nevada corporation,<br><br>Defendants. | Case No. 2:17-cv-02349-KJD-NJK<br><br>**[PROPOSED] DISCOVERY PLAN AND SCHEDULING ORDER**<br><br>**SPECIAL SCHEDULING REVIEW REQUESTED** |

1    Under Federal Rule of Civil Procedure 26(f) and Local Rule 26-1, plaintiff V5
2    Technologies, LLC, d/b/a/ Cobalt Data Centers ("Cobalt"), through its counsel, Bryan Merryman,
3    Catherine Simonsen, Scott Bogatz, and Kerry Kleiman, and defendants Switch, Ltd., Switch
4    Business Solutions, LLC, Switch Communications Group L.L.C., and Switch, Inc. ("Switch"),
5    through their counsel, Chris Miltenberger, conducted a discovery-planning conference on October
6    12, 2017, and hereby submit to the Court the following proposed Discovery Plan and Scheduling
7    Order:

**1.    Statement of the Nature of the Case**

Switch is a provider of colocation data center services.  Colocation data centers allow organizations to operate their critical computing infrastructure (typically, servers, storage, and/or networking equipment) in a purpose-built and managed facility, rather than incur the capital expenditures and risks associated with housing this equipment (and the underlying data) internally.  The basic offerings of colocation data centers are space, power, cooling, and telecommunications services.  Cobalt opened a colocation data center in Las Vegas in 2013 and closed operations at the end of 2015.

Cobalt alleges that Switch monopolized and restrained trade in the Las Vegas high-end colocation data center market and excluded Cobalt and other competitors.  Cobalt alleges this conduct violated Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2, Nevada Revenue Statute § 598A.060; and the Nevada common law that prohibits intentional interference with contractual relations and intentional interference with prospective economic advantage.

Switch denies these allegations.

**2.    Description of the Principal Factual and Legal Disputes in the Case**

The relevant product and geographic market(s) in which Switch and Cobalt competed during the relevant time period;

Whether Switch had market and monopoly power in the relevant market;

Whether Switch engaged in the conduct alleged;

Whether Switch entered into one or more unlawful agreements that injured Cobalt;

Whether Switch's alleged conduct and agreements constituted exclusionary conduct;

1    Whether Switch's alleged conduct and agreements restrained trade in a relevant market;

2    Whether Switch's alleged conduct harmed competition;

3    Whether Switch's alleged conduct caused Cobalt to lose customers and go out of business;

4    What caused Cobalt to go out of business;

5    The quality of Cobalt's offerings;

6    Whether Cobalt's injuries stem from competition-reducing aspects of Switch's conduct and are of the kind the antitrust laws are meant to prevent;

8    Whether Cobalt had valid and existing contracts with third parties;

9    Whether Cobalt had prospective contractual relationships with third parties;

10    Whether Switch had knowledge of such contracts and prospective contractual relationships;

12    Whether Switch engaged in intentional acts with the intent and design to disrupt such contracts and prospective contractual relationships;

14    Whether Switch was privileged in such conduct;

15    Whether Switch's conduct disrupted such contracts and prospective contractual relationships and caused Cobalt damages;

17    Whether Switch acted maliciously, fraudulently, and oppressively in disrupting Cobalt's contracts and prospective contractual relationships;

19    Whether and, if so, in what amount Switch's alleged conduct caused Cobalt to suffer damages.

21    <u>Switch further maintains that the following are additional principal factual and legal disputes in this case</u>:

23    Whether either Switch is entitled to attorneys' fees;

24    Whether this lawsuit was brought in bad faith by Cobalt;

25    The applicability and rights inherent in Switch's defenses and counter-claims which have yet to be filed given the pending Motion to Dismiss.

**3.     Amendment of Pleadings**

The parties agree the deadline to file amended pleadings or add parties be set for 90 days before the close of discovery.

<u>Cobalt</u>:  Cobalt requests discovery close on January 30, 2019, and therefore requests that the deadline to file amended pleadings be set for **November 1, 2018**.

<u>Switch</u>:  Switch requests discovery close on September 28, 2018, and therefore requests that the deadline to file amended pleadings be set for **June 1, 2018**.

**4.     Changes to the Timing, Form, or Requirement for Disclosures under Rule 26(a)**

<u>Cobalt</u>:  Cobalt proposes no changes to the form or requirement for disclosures under Rule 26(a). Cobalt proposes that the deadline to serve initial disclosures should be **December 12, 2017**, which is 14 days after the Court lifted the discovery stay.

<u>Switch</u>:  Switch proposes the deadline to serve initial disclosures should occur no later than **January 12, 2018** as Cobalt has already propounded a large number of requests for production.

**5.     Discovery Subjects, Deadlines, and Phasing; Expert Disclosures**

The parties anticipate that discovery will relate to the claims and defenses identified above as well as any counterclaims Switch may raise if required to answer.  The parties reserve all rights to seek discovery to the fullest extent permitted under the Federal Rules of Civil Procedure.

Switch appeared on October 4, 2017.

<u>Cobalt</u>:  Cobalt proposes that discovery be bifurcated into two phases:  (1) fact, followed by (2) expert.  This is customary and useful in complex antitrust cases such as this one.  This phasing allows all facts to be gathered on issues such as geographic market before the parties' experts are required to serve reports based in part on such facts.  In the parties' Stipulation to Extend Deadlines, Switch stipulated: "Additional time is warranted to permit Defendants ample time to research and analyze the issues raised in Plaintiff's Complaint and for the parties to brief the **complex issues raised by the claims set forth in that Complaint**." ECF No. 23 at 2 (emphasis added).

- 3 -

1    Cobalt's position is that approximately one year of fact discovery followed by 90 days of
2    expert discovery is required for discovery.  Accordingly, fact discovery should close on
3    November 1, 2018, and expert discovery should close on January 30, 2019.  Cobalt's expert
4    disclosures and reports should be due on December 1, 2018.  Switch's expert disclosures and
5    rebuttal reports should be due on December 31, 2019.  Cobalt's expert reply reports, if any,
6    should be due on January 30, 2019.

7    <u>Switch</u>: Switch notes that the language quoted by Cobalt in ECF No. 23 was related to the
8    applicable deadlines, not the instant Discovery Plan and is being taken out of context.  Switch
9    contends the case is not as complex as suggested by Cobalt and objects to the discovery being
10   bifurcated into two phases.  Switch requests that all discovery close on **September 28, 2018** as a
11   matter of judicial economy and preservation of time.  If good cause exists for additional time then
12   in good faith Switch will entertain Cobalt's request to stipulate to an extension.

13   **6.     Interim Status Report**

14   Pursuant to Local Rule 26-3, the deadline for filing the Interim Status Report shall be 60
15   days before the discovery cutoff date.

16   <u>Cobalt</u>:  Cobalt requests discovery close on January 30, 2019, and therefore requests the
17   deadline to file the Interim Status Report be set for **December 1, 2018**.

18   <u>Switch</u>:  Switch requests that discovery close on September 28, 2018 and that the Interim
19   Status Report be due **July 30, 2018**.

20   **7.     Electronically Stored Information**

21   <u>Cobalt</u>:  On December 1, 2017, counsel for Cobalt sent counsel for Switch a proposed ESI
22   Stipulation for inclusion as an exhibit to this Discovery Plan for approval by the Court, based on
23   ESI stipulations counsel for Cobalt have successfully used and had approved by federal courts in
24   other cases.  Switch deleted reference in Cobalt's draft Discovery Plan to this proposed ESI
25   Stipulation.  Cobalt requests that the Court order the parties to submit to the Court a proposed ESI
26   Stipulation, or alternative versions from each party, by December 12, 2017.  Given Switch's
27   request for a stay of discovery, initial attempt to move the deadline for initial disclosures to
28   January 30, 2018, and failure to respond with comments to Cobalt's proposed ESI Stipulation

- 4 -

DISCOVERY PLAN AND SCHEDULING ORDER
Case No. 2:17-cv-02349-KJD-NJK

1  sent on December 1, 2017 (and Stipulated Protective Order sent on November 30, 2017, *see*
2  ¶ 8(a), *infra*), it appears Switch may intend to use the lack of an ESI Stipulation and/or Protective
3  Order to delay production of documents.  Therefore, Cobalt respectfully submits that a deadline
4  of December 12, 2017 for the parties to submit a proposed ESI Stipulation to the Court is
5  warranted.

6  <u>Switch</u>: The Order does not require an ESI.  Cobalt has insisted that an ESI be included at
7  this time.  Switch is open to further discussing Cobalt's request but views a request for an ESI at
8  this time to be premature and will only benefit Cobalt as Cobalt is no longer engaged in any
9  business. On November 5, 2017 Cobalt deleted Switch's original the language stating the same.
10 Moreover, Switch agreed to lower the close of discovery from January 30, 2018, to January 12,
11 2018 as a good faith accommodation and because this date is reasonable given the holiday season.

12 **8.     Privilege**

13 The parties agree that the Federal Rules of Civil Procedure and Federal Rules of Evidence
14 govern issues of privilege or protection.

15 **a.     Protective Order**

16 <u>Cobalt</u>:  On November 30, 2017, counsel for Cobalt sent counsel for Switch a proposed
17 Stipulated Protective Order for inclusion as an exhibit to this Discovery Plan for approval by the
18 Court, based on a protective order approved by this Court in another case (*see Tinder-Howell v.*
19 *Union Pacific Railroad Co., et al.*, No. 3:15-cv-00317-LRH-VPC (Apr. 27, 2016) (ECF No. 130-
20 1)).  Cobalt requests that the Court order the parties to submit to the Court a proposed Stipulated
21 Protective Order, or alternative versions from each party, by December 12, 2017.  Given Switch's
22 request for a stay of discovery, initial attempt to move the deadline for initial disclosures to
23 January 30, 2018, and failure to respond with comments to Cobalt's proposed Stipulated
24 Protective Order sent on November 30, 2017 (and ESI Stipulation sent on December 1, 2017, *see*
25 ¶ 7, *supra*), it appears Switch may intend to use the lack of an ESI Stipulation and/or Protective
26 Order to delay production of documents.  Therefore, Cobalt respectfully submits that a deadline
27 of December 12, 2017 for the parties to submit a proposed Stipulated Protective Order to the
28 Court is warranted.

    <u>Switch</u>:  The parties are working on a Stipulated Protective Order and Switch proposes presenting it to the Court once the parties agree on the nature of the same.  Switch has only had a few days to review Cobalt's proposals and Switch has its own language that Courts have approved in the past that protect the unique nature of Switch's federal contracts and mission critical services.  A protective order is particularly critical in this matter as Switch is the only party with ongoing operations. Switch notes it needs sufficient time to negotiate a Protective Order because such an Order will likely be solely dedicated to protecting Switch's trade secrets and confidential information given the lopsided nature of this suit.  A protective order is particularly material in this case as Switch actively supports several hundreds of federal, state and enterprise mission critical contracts and because Cobalt has previously admitted to misappropriating Switch's intellectual property.

    **9.**    **Limitations on Discovery**

    <u>Cobalt</u>:  Cobalt proposes that the limitations on discovery imposed under the federal and local rules apply, except that there be no limit on the number of party depositions.  Cobalt has preliminarily identified at least 20 individuals in executive or senior roles at Switch who appear likely to have unique personal knowledge and information relevant to the litigation.  Cobalt reasonably believes there are numerous other lower-level employees who dealt with Switch's and/or Cobalt's actual and/or prospective customers, suppliers, vendors, and partners who may need to be deposed.

    <u>Switch</u>:  Switch proposes that the limitations on discovery imposed under the federal and local rules apply.

    **10.**    **Dispositive Motions Deadlines**

    The parties agree that the deadline for filing dispositive motions should be set for 30 days after the discovery cutoff date.

    <u>Cobalt</u>:  Cobalt requests discovery close on January 30, 2019, and therefore requests that the deadline to file dispositive motions be set for **March 1, 2019**.

    <u>Switch</u>:  Switch requests that discovery close on September 28, 2018 and therefore requests that the deadline to file dispositive motions be set for **October 28, 2018**.  Again, Switch

agrees to entertain a request to extend the discovery deadline in good faith should good cause exist.

**11.     Joint Pretrial Order Deadline**

The parties agree that the deadline for submitting the joint pretrial order should be 30 days after the dispositive-motion deadline, suspended until 30 days after decision on dispositive motions if dispositive motions are filed.

Cobalt:  Cobalt requests the deadline to file dispositive motions be set for March 1, 2019, and therefore requests that the deadline to submit the joint pretrial order be set for **March 31, 2019**, if no dispositive motions are filed, and if dispositive motions are filed, then 30 days after decision on dispositive motions.

Switch:  Switch requests that dispositive motions be set for August 31, 2018 and therefore requests that the deadline to file the pretrial order be set for **August 1, 2018**.  Again, Switch agrees to entertain a request to extend the discovery deadline in good faith should good cause exist.

**12.     Any Other Orders Under Rule 26(c) or Rule 16(b) and (c)**

Cobalt:  Cobalt proposes that the deadline to file *Daubert* motions be set for the same deadline to file the joint pretrial order:  **March 31, 2019**, if no dispositive motions are filed, and if dispositive motions are filed, then 30 days after decision on dispositive motions.

Switch:  As noted above, Switch proposes that the deadline to file the pretrial order be **August 1, 2018,** and that the deadline to file *Daubert* motions be set for the same deadline to file the joint pretrial order if no dispositive motions are filed, and if dispositive motions are filed, then 30 days after decision on dispositive motions.

**13.     Meet and Confer Certifications**

The parties certify that they met and conferred about the possibility of using alternative dispute resolution processes including mediation, arbitration, and, if applicable, early neutral evaluation.  Counsel for Switch advised that any settlement discussions would be premature.  The parties will continue to consider the possibility of private mediation as the case moves forward.

1   The parties certify that they considered consent to trial by a magistrate judge under 28
2   U.S.C. § 636(c) and Fed. R. Civ. P. 73.  The parties do not consent.
3   The parties certify that they considered consent to the use of the Short Trial Program
4   (General Order 2013-01).  The parties do not consent.
5   The parties certify that they conferred regarding whether they intend to present evidence
6   in electronic format to jurors for the purposes of jury deliberations and any stipulations the parties
7   reached regarding providing discovery in an electronic format compatible with the court's
8   electronic jury evidence display system.  The parties agreed to discuss these topics and prepare
9   stipulations regarding providing discovery in electronic format compatible with the court's
10  electronic jury evidence display system as the case gets closer to trial.

Dated:  December 5, 2017

By:  s/ Catherine S. Simonsen
Catherine S. Simonsen (*Pro Hac Vice*)
Bryan A. Merryman (*Pro Hac Vice*)
**WHITE & CASE LLP**
555 S. Flower Street, Suite 2700
Los Angeles, CA  90071-2433
Telephone:  (213) 620-7700
Facsimile:  (213) 452-2329
bmerryman@whitecase.com
catherine.simonsen@whitecase.com

Claire DeLelle (*Pro Hac Vice*)
**WHITE & CASE LLP**
701 Thirteenth Street, NW
Washington, DC 20005-3807
Telephone:  (202) 626-3600
Facsimile:  (202) 639-9355
claire.delelle@whitecase.com

I. Scott Bogatz
Nevada Bar No. 3367
Kerry E. Kleiman
Nevada Bar No. 14071
**REID RUBINSTEIN & BOGATZ**
Bank of America Plaza
300 South 4th Street, Suite 830
Las Vegas, NV 89101
Telephone:  (702) 776-7000
Facsimile:  (702) 776-7900

- 8 -

sbogatz@rrblf.com
kkleiman@rrblf.com

Attorneys for Plaintiff
V5 TECHNOLOGIES, LLC, d/b/a COBALT DATA CENTERS

Dated:  December 5, 2017

By:  s/ Samuel Castor

Samuel Castor
Anne-Marie Birk
In-House Attorneys for Defendants
SWITCH, LTD., SWITCH BUSINESS SOLUTIONS, LLC, SWITCH COMMUNICATIONS GROUP L.L.C., and SWITCH, INC.

**ORDER**

IT IS SO ORDERED.

DATED this _____ day of _____, 2017.

_____

Hon. Nancy J. Koppe

United States Magistrate Judge

- 9 -

| | |
|---|---|
| 1 | **PROOF OF SERVICE** |
| 2 | I hereby certify that I am employed in Los Angeles, state of California. I am over the age |
| 3 | of 18 and not a party to the within action. My business address is White & Case LLP, 555 South |
| 4 | Flower Street, Suite 2700, Los Angeles, CA 90071-2433. |
| 5 | On December 5, 2017, I caused the foregoing document(s) to be filed via the Court's |
| 6 | CM/ECF system, which will accomplish service on all parties of record through their counsel. |
| 7 | I declare under penalty of perjury under the laws of the United States of America that the |
| 8 | above is true and correct. |
| 9 | Executed on December 5, 2017, at Los Angeles, California. |

                                                                      s/ Catherine S. Simonsen
                                                                       Catherine S. Simonsen