Joseph S. Kistler (3458)
Jeffrey R. Hall (9572)
HUTCHISON & STEFFEN, PLLC
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145
Phone (702) 385-2500
Fax (702) 385-2086
jkistler@hutchlegal.com
jhall@hutchlegal.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| VS TECHNOLGIES, LLC, d/b/a COBALT DATA CENTERS,<br><br>　　　　Plaintiff,<br><br>v.<br><br>SWITCH, LTD., a Nevada limited company; SWITCH BUSINESS SOLUTIONS, LLC, a Nevada limited liability company; SWITCH COMMUNICATIONS GROUP, LLC, a Nevada limited liability company; SWITCH, INC., a Nevada corporation.<br><br>　　　　Defendants. | Case No.:  2:17-cv-02349-KJD-NJK<br><br><br>**DEFENDANTS' MOTION TO QUASH OR MODIFY SUBPOENAS** |

**1.    Introduction.**

Defendants Switch, Ltd., et al ("Switch"), by and through their counsel of record, Hutchison & Steffen, PLLC, respectfully request that the Court quash or modify the subpoenas served on several of Switch's clients, vendors, and members of Switch's Board by Plaintiff V5 Technologies, LLC, d/b/a Cobalt Data Centers ("Cobalt").  Switch objects to the subpoenas because most of the subpoenaed information is in the possession of the parties to this litigation.  Therefore, there is no legitimate basis for breadth and scope of the subpoenas.  Proceeding in this manner, Cobalt is causing undue expense on the third parties in violation of FRCP

45(d)(1).  Additionally, it results in strain on Switch's relationship with these parties.

In other instances, the requests seek documents protected by the Stipulated Protective Order agreed to by the parties, and, as such, could result in unprotected copies of documents in Switch's possession entering into the public record.  Switch has asked Cobalt to confirm in writing that Cobalt will not disseminate any documents received under the subpoenas to anyone, including client representatives, until Switch can review the documents and place a proper designation on such documents as may be needed under the Stipulated Protective Order in this case.  To the extent that Cobalt confirms this in writing, that is helpful in assuaging Switch's concerns in this regard.  However, given the imminent response deadline in the subpoenas, Switch sees no alternative but to file the present motion at this time.

Switch is affected by these subpoenas, both for the reasons listed above and because of the strain on Switch's relationship with many of the individuals and entities that were subpoenaed.  Cobalt has no legitimate reason to seek the volume and scope of documents from the individuals and entities listed below, and as such Switch respectfully requests that the court quash or modify these subpoenas.

## 2. Factual Background.

On May 29, 2018, Switch received notice from Cobalt that it had served subpoenas on 19 different individuals and entities.  The subpoenaed parties consisted of Switch's clients, vendors, and board members.  The requests included in these subpoenas were generally objectionable, requesting documents from these third parties that were either in the possession of one or both of the parties to the litigation, that were overly burdensome or overbroad, or that sought documents protected under the Stipulated Protective Order agreed to by the parties.  It is apparent from the tenor and timing of the subpoenas that they represent yet another attempt from Cobalt to harass and annoy Switch, this time by targeting those with whom it has business relationships.

Responses to the subpoenas were scheduled for June 20, 2018.  Switch has reached out to all of the subpoenaed parties to let them know that this Motion to Quash or Modify would be

1    filed.  Some of these parties have determined to file their own objections.  Others, specifically

2    Switch's board members, are being represented by Switch, who will be filing objections on

3    their behalf.

4    **3.        Legal Standard.**

5          FRCP 45(d)(3) lays out the requirements for quashing or modifying a subpoena.  A

6    federal court is required to quash or modify a subpoena that "subjects a person to undue

7    burden."[1]  The court may also quash a subpoena "to protect a person subject to or affected by a

8    subpoena…if it requires disclosing a trade secret or other confidential research, development, or

9    commercial information."[2]  This Court has, in the past, held the following with regard to a

10   party's moving to quash a subpoena served on a third party:

11   1.   ***A party may move to quash a third party subpoena if it has a specific interest in the***

12        ***documents requested***.  "In general, a party has no standing to move to quash a subpoena

13        served upon a third party *unless the party claims a personal right or privilege with respect*

14        *to the documents requested in the subpoena*."[3]  Thus, a party may move to quash a subpoena

15        which seeks documents in which the moving party has a "personal right or privilege."

16   2.   ***A party may move to quash a third party subpoena if the subpoena will cause an undue***

17        ***burden for the party itself.***  "A party lacks standing to quash a subpoena on grounds that it

18        is overbroad or unduly burdensome *on a third party*."[4]  However, there is no restriction on

19        standing if a party seeks to quash a third-party subpoena because it will cause an undue

20        burden on the party itself.  Indeed, courts *must* quash or modify a subpoena if it "subjects *a*

21        *person* to an undue burden."[5]  FRCP 45 does not limit the burdened person to the individual

22

23        [1] FRCP 45(d)(3)(A)(iv).

24        [2] FRCP 45(d)(3)(B).

25        [3] *Dale Evans Parkway 2012, LLC v. Nat'l Fire & Marine Ins. Co*., No. EDCV15979JGBSPX,
     2016 WL 7486606, at *3 (C.D. Cal. Oct. 27, 2016).

26

27        [4] *Id.*

28        [5] Fed. R. Civ. P. 45(d)(3)(A)(iv)

1    or entity that is subject to the subpoena.  Of course, "[t]he party that moves to quash a

2    subpoena has the burden of persuasion,"[6] meaning that it must clearly demonstrate the

3    burden that the subpoena will create.

4    3.  ***Subpoenas cannot be used to circumvent other methods of discovery***.  The primary method

5         of discovery is, of course, written discovery between the parties.  Therefore, "[t]he court

6         also has an obligation to protect non-parties from being burdened with subpoenas for

7         documents that can more easily and inexpensively be obtained from the opposing party."[7]

8    ## 4.    Legal Argument.

9    **A.    Cobalt's Subpoenas are unnecessarily duplicative and create an undue burden on**

10        **Switch and the responding parties.**

11            As a result of Cobalt's subpoenas, Switch is both an entity that is being subjected to an

12   undue burden and, with regard to trade secret and other documents, a party "affected" by the

13   subpoena.  Switch therefore is in a position to move this court to quash these subpoenas, and

14   through this Motion does so.

15            Cobalt's subpoenas are inappropriate, and should be quashed by this court for several

16   reasons.  The primary reason that the subpoenas should be quashed is their unnecessary

17   duplicativeness—many of the documents requested in the subpoenas are *clearly* in the

18   possession of either Cobalt or Switch.  As this court has held in the past, it "has an obligation to

19   protect non-parties from being burdened with subpoenas for documents that can more easily and

20   inexpensively be obtained from the opposing party."[8] Since these documents will *necessarily* be

21   produced by one or both parties during the regular course of discovery, the requests represent an

22   unnecessary burden on the responding parties.  Since these documents will *necessarily* be

23

24   ────────────────────

25   [6] *Dinkins v. Schinzel*, No. 217CV01089JADGWF, 2017 WL 4183115, at *1 (D. Nev. Sept. 19,
     2017)

26   [7] *McCall v. State Farm Mut. Auto. Ins. Co.*, No. 216CV01058JADGWF, 2017 WL 3174914, at
27   *6 (D. Nev. July 26, 2017)

28   [8] *Id.*

1  produced by one or both parties during the regular course of discovery, the requests represent an

2  unnecessary burden on the responding parties.

3       Moreover, the document categories in Cobalt's subpoenas are duplicative to Requests

4  for Production made by Cobalt to Switch.  Switch has already spent considerable time and

5  money beginning the search for these documents; to request these identical documents from

6  Switch's clients and vendors is unnecessary and burdensome for every party involved.  Cobalt's

7  requests show essentially no efforts to minimize the burden placed on the parties responding to

8  the subpoenas.  For example, many of the subpoenas include the following request:  "All

9  documents concerning Cobalt and/or Cobalt Cheyenne, including without limitation *all*

10  *communications concerning Cobalt and/or Cobalt Cheyenne.*"  While this request is obviously

11  extremely broad on its face, more important is the fact that *every single communication with*

12  *Cobalt* will necessarily be included in this category, meaning that Cobalt is seeking documents

13  of which it is very clearly in possession.

14       The fact that these requests are unduly burdensome to the responding parties will also

15  cause an undue burden to devolve upon Switch, as Switch's relationship with the responding

16  parties (many of them longtime customers and/or vendors of Switch) will necessarily deteriorate

17  as a result of the burden placed on the responding parties by Cobalt's requests.  Already

18  subpoenaed parties have contacted Switch and expressed their frustration with these subpoenas.

19  One subpoenaed party, NetEffect, specifically requested that Switch pay its legal fees.[9]

20       The requests made by Cobalt in their subpoenas are also significantly overbroad.  It is

21  true that a final determination from the court regarding the time period of the relevant discovery

22  period in this case is still pending.  However, it is nevertheless unreasonable for Cobalt to ask

23  parties that are, at best, tangentially related to this litigation to dig through emails and

24  documents from the past seven and a half years to find information responsive to a dozen or

25

26                      _____

27      [9] *See* Email Correspondence between Jeffrey Hall, Sam Castor, Jeff Grace, and David Rounds, attached as **Exhibit A**.

28

1    more generally overbroad and objectionable requests.  The specific requests that are overbroad

2    in their scope are laid out in additional detail *infra*.  In *Moon v. SCP Pool Corp.*, a California

3    case frequently cited by this Court, the Central District Court of California noted that certain

4    subpoena requests were "overbroad on [their] face and exceed[ ] the bounds of fair discovery"

5    in that they sought "information over a ten year or greater period" and sought overly generalized

6    information.[10]  The principle is the same, namely that the breadth of these requests is simply

7    unreasonable.  The *Moon* court further explained that many of these requested documents could

8    more easily be obtained from the opposing party in the litigation, which is the same issue facing

9    the parties in this case.  The overly broad nature of the requests contained in the subpoenas

10   served by Cobalt also creates an undue burden for Switch as the unfair and overwhelming

11   amount of work that will have to be done by the responding parties will certainly place a strain

12   on their relationship with Switch.

13          Beyond the duplicativeness and overbreadth of the subpoenas, they are also written in

14   such a way as to allow Cobalt to avoid the terms of the parties' Stipulated Protective Order.

15   Many of Cobalt's subpoenas seek documents from third parties that fall within the purview of

16   the Protective Order signed by both parties.  These documents include highly confidential

17   technical information, trade secret information, the public dissemination of which may be

18   harmful to Switch, as well as other sensitive documents.  Any documents that are produced by

19   the responding parties are unlikely to be produced in accordance with the terms of the

20   Stipulated Protective Order.  Pursuant to the protective order, highly confidential information

21   has been and will be redacted from Switch's productions.  Responses to these subpoenas will

22   include highly confidential information that was redacted from Switch's production. As has

23   been mentioned several times in the past, Cobalt has clearly entered this litigation with the

24   intent to harass and annoy Switch, likely with the hope that Switch will give in and provide

25

26   _____

27   [10] Moon v. SCP Pool Corp., 232 F.R.D. 633, 637 (C.D. Cal. 2005)

28

Cobalt with an early "nuisance" settlement rather than suffer the burdens associated with such an unreasonable and invasive litigation style.  It would suit Cobalt's goals to have these third parties unwittingly produce Switch's sensitive information without the protection of the protective order.

### i.    The Subpoenaed Parties.

Cobalt has served subpoenas on each of the individuals or entities listed below.  For the general reasons set forth above, as well as the specific reasons listed below, these subpoenas are inappropriate, and Switch moves that this court quash them.

**Nicole Folino**.  Ms. Folino is a Regional Vice President at Sandler Partners and is the wife of Joe Folino, Vice President of Connectivity at Switch.  Ms. Folino was conflict checked prior to any retention Sandler Partners has brokered with regard to telecommunication and colocation deals for Switch.  Cobalt has made no factual allegations or legal claims against Switch regarding Sandler Partners or Ms. Folino, and therefore their inclusion in the subpoena process is wholly inappropriate.  The requests themselves are also specifically objectionable in the following ways:

- **Requests No. 1 through 10** all seek documents that would almost certainly be in the possession of one or both of the parties to this litigation, and therefore will be produced during the regular course of discovery.  The requests are therefore unduly burdensome to the responding party and, as a result, unduly burdensome to Switch.

- **Requests No. 2, 4, 5, 8, 9, 10, and 11** seek documents that are confidential in nature.  Specifically, they seek trade-secret documentation regarding agreements made between Sandler Partners and/or Ms. Folino and Switch, information from Switch's policies and procedures, Switch's pricing, and other sensitive information regarding Switch.  The subpoena makes no provision for the production of responsive documents pursuant to the parties' Stipulated Protective Order, and therefore will result in the unprotected production of these sensitive documents.

- **Requests No. 11 and 12** are extremely vague, and will require the respondent to perform an undue amount of labor to determine what, if any, documents are responsive to these requests.  This burden will likely have a negative impact on the relationship Ms. Folino and Sandler Partners have with Switch.  Furthermore, these requests are not a request

for specific documents, but rather a fishing expedition: Cobalt is seeking to gain generic information regarding colocation data center customers and their preferences.  The responding party has no responsibility to provide Cobalt with this type of generic information that is not specifically related to any of the claims associated with this case, and should not be required to do so.

**Cannery Casino**.  The Cannery Casino is a customer of Switch.  All of the factual allegations and legal claims made by Cobalt regarding Cannery Casino involve Switch's alleged refusal to allow third parties to work with Cobalt.  Any requests that fall outside of that scope are excessive and should be disallowed.  The requests themselves are also specifically objectionable in the following ways:

- **Requests No. 1 through 11** all seek documents that would almost certainly be in the possession of one or both of the parties to this litigation, and therefore will be produced during the regular course of discovery.  The requests are therefore unduly burdensome to the responding party and, as a result, unduly burdensome to Switch.

- **Requests No. 5 through 9** seek documents that are confidential in nature.  Specifically, they seek trade-secret documentation regarding agreements made between Cannery Casino and Switch, information from Switch's policies and procedures, Switch's pricing, and other sensitive information regarding Switch.  The subpoena makes no provision for the production of responsive documents pursuant to the parties' Stipulated Protective Order, and therefore will result in the unprotected production of these sensitive documents.

- **Requests No. 11 and 12** are extremely vague, and will require the respondent to perform an undue amount of labor to determine what, if any, documents are responsive to these requests.  This burden will likely have a negative impact on the relationship Cannery Casino has with Switch.  Furthermore, these requests clearly amount to a fishing expedition: Cobalt is seeking to gain generic information regarding colocation data center customers.  The responding party has no responsibility to provide Cobalt with this generic information that is not specifically related to any of the claims associated with this case, and should not be required to do so.

**CenturyLink**.  CenturyLink and Switch have a long history of doing business together, as CenturyLink is one of the providers of internet and other digital services relied on by many in the Las Vegas valley.  All of the factual allegations and legal claims made by Cobalt regarding

CenturyLink deal with Switch's alleged refusal to allow third parties to work with Cobalt.  Any requests that fall outside of that scope are excessive and should be disallowed.  The requests themselves are also specifically objectionable in the following ways:

- **Requests No. 1 through 13** all seek documents that would almost certainly be in the possession of one or both of the parties to this litigation, and therefore will be produced during the regular course of discovery.  The requests are therefore unduly burdensome to the responding party and, as a result, unduly burdensome to Switch.

- **Requests No. 1 through 6 and 11 through 13** seek documents that are confidential in nature.  Specifically, they seek trade-secret documentation regarding agreements made between CenturyLink and Switch, information from Switch's policies and procedures, Switch's pricing, and other sensitive information regarding Switch.  The subpoena makes no provision for the production of responsive documents pursuant to the parties' Stipulated Protective Order, and therefore will result in the unprotected production of these sensitive documents.

- **Requests No. 9 through 11 and 14** are extremely vague, and will require the respondent to perform an undue amount of labor to determine what, if any, documents are responsive to these requests.  This burden will likely have a negative impact on the relationship CenturyLink has with Switch.

**Defense Advanced Research Projects ("DARPA")**.  DARPA is a Switch customer. All of the factual allegations and legal claims made by Cobalt regarding DARPA concern DARPA's decision to change the requirements to obtain a specific government contract.  Cobalt admits in its Complaint that this decision was made by DARPA itself.  As such, any requests that fall outside of that scope are excessive and should be disallowed.  The requests themselves are also specifically objectionable in the following ways:

- **Requests No. 1 and 2**[11] both seek, at least in part, documents that would almost certainly be in the possession of one or both of the parties to this litigation, and therefore will be produced during the regular course of discovery.  The requests are therefore unduly burdensome to the responding party and, as a result, unduly burdensome to Switch.

---

[11] A numbering error resulted in Cobalt's two requests to DARPA being labelled as Request No. 15 and 16.  The correct numbering is included here for the sake of clarity.

- **Request No. 2** seeks documents that are confidential in nature. Specifically, they seek trade-secret documentation regarding agreements made between DARPA and Switch and Switch's pricing. The subpoena makes no provision for the production of responsive documents pursuant to the parties' Stipulated Protective Order, and therefore will result in the unprotected production of these sensitive documents.

**LV Global Econ Alliance ("LV GEA")**. Switch sponsored LVGEA's marketing, branding, and special events. In addition, Switch donated approximately $1,000,000 in free office and event space to LVGEA to assist in attracting business to Las Vegas. Cobalt has made no factual allegations or legal claims against Switch regarding LV GEA, and therefore its inclusion in the subpoena process is wholly inappropriate. The requests themselves are also specifically objectionable in the following ways:

- **Requests No. 1 through 5 and 8 through 10** all seek documents that would almost certainly be in the possession of one or both of the parties to this litigation, and therefore will be produced during the regular course of discovery. The requests are therefore unduly burdensome to the responding party and, as a result, unduly burdensome to Switch.

- **Requests No. 1 through 5 and 8** seek documents that are confidential in nature. Specifically, they seek trade-secret documentation regarding agreements made between LV GEA and Switch, Switch's pricing, and other sensitive information regarding Switch. The subpoena makes no provision for the production of responsive documents pursuant to the parties' Stipulated Protective Order, and therefore will result in the unprotected production of these sensitive documents.

- **Requests No. 5 through 10** are extremely vague, and will require the respondent to perform an undue amount of labor to determine what, if any, documents are responsive to these requests. This burden will likely have a negative impact on the relationship LV GEA has with Switch. Furthermore, several of these requests clearly amount to a fishing expedition: Cobalt is seeking to gain generic information regarding any and all colocation data centers with ties to LV GEA. The responding party has no responsibility to provide Cobalt with this generic information that is not specifically related to any of the claims associated with this case, and should not be required to do so.

**Meruelo Group, LLC ("Meruelo")**. To the best of Switch's knowledge, there is no relationship between the Meruelo Group and Switch. Cobalt has made no factual allegations or

legal claims against Switch regarding Meruelo, and therefore its inclusion in the subpoena

process is wholly inappropriate.  The requests themselves are also specifically objectionable in

the following ways:

- **Requests No. 1 through 12** all seek, at least in part, documents that
  would almost certainly be in the possession of one or both of the parties
  to this litigation, and therefore will be produced during the regular course
  of discovery.  The requests are therefore unduly burdensome to the
  responding party and, as a result, unduly burdensome to Switch.

- **Requests No. 5 through 12** seek documents that are confidential in
  nature.  Specifically, they seek trade-secret documentation regarding
  agreements made between Meruelo and Switch, information from
  Switch's policies and procedures, Switch's pricing, and other sensitive
  information regarding Switch.  The subpoena makes no provision for the
  production of responsive documents pursuant to the parties' Stipulated
  Protective Order, and therefore will result in the unprotected production
  of these sensitive documents.

- **Requests No. 1 through 6 and 13 through 15** are extremely vague, and
  will require the respondent to perform an undue amount of labor to
  determine what, if any, documents are responsive to these requests.  This
  burden will likely have a negative impact on the relationship Meruelo has
  with Switch.  Furthermore, several of these requests clearly amount to a
  fishing expedition: Cobalt is seeking to gain generic information
  regarding colocation data center customers.  The responding party has no
  responsibility to provide Cobalt with this generic information that is not
  specifically related to any of the claims associated with this case, and
  should not be required to do so.

**NetEffect**.  NetEffect is a customer of Switch.  Cobalt has made no factual allegations

or legal claims against Switch regarding NetEffect, and therefore its inclusion in the subpoena

process is wholly inappropriate. In fact, NetEffect has raised specific concerns regarding the

scope of the subpoena and the subpoena is affecting the business relationship between Switch

and NetEffect. The requests themselves are also specifically objectionable in the following

ways:

- **Requests No. 1 through 9** all seek, at least in part, documents that would
  almost certainly be in the possession of one or both of the parties to this
  litigation, and therefore will be produced during the regular course of
  discovery.  The requests are therefore unduly burdensome to the
  responding party and, as a result, unduly burdensome to Switch.

- **Requests No. 4, 5, 8, and 9** seek documents that are confidential in nature. Specifically, they seek trade-secret documentation regarding agreements made between NetEffect and Switch, information from Switch's policies and procedures, Switch's pricing, and other sensitive information regarding Switch. The subpoena makes no provision for the production of responsive documents pursuant to the parties' Stipulated Protective Order, and therefore will result in the unprotected production of these sensitive documents.

- **Requests No. 1, 4, and 6 through 12** are extremely vague, and will require the respondent to perform an undue amount of labor to determine what, if any, documents are responsive to these requests. This burden will likely have a negative impact on the relationship NetEffect has with Switch. Furthermore, several of these requests clearly amount to a fishing expedition: Cobalt is seeking to gain generic information regarding colocation data center customers. The responding party has no responsibility to provide Cobalt with this generic information that is not specifically related to any of the claims associated with this case, and should not be required to do so.

**Networx Systems**. Networx is a Switch Vendor. All of the factual allegations and legal claims made by Cobalt regarding Networx have to do with Switch's alleged offer to pay Networx's defense costs and legal fees if it agreed to break its contract with Cobalt. Any requests that fall outside of that scope are excessive and should be disallowed. The requests themselves are also specifically objectionable in the following ways:

- **Requests No. 1 through 11** all seek documents that would almost certainly be in the possession of one or both of the parties to this litigation, and therefore will be produced during the regular course of discovery. The requests are therefore unduly burdensome to the responding party and, as a result, unduly burdensome to Switch.

- **Requests No. 2 and 5 through 11** seek documents that are confidential in nature. Specifically, they seek trade-secret documentation regarding agreements made between Networx and Switch, information from Switch's policies and procedures, Switch's pricing, and other sensitive information regarding Switch. The subpoena makes no provision for the production of responsive documents pursuant to the parties' Stipulated Protective Order, and therefore will result in the unprotected production of these sensitive documents.

- **Requests No. 1 through 4, 6, and 9 through 14** are extremely vague, and will require the respondent to perform an undue amount of labor to determine what, if any, documents are responsive to these requests. This burden will likely have a negative impact on the relationship Networx has with Switch. Furthermore, several of these requests clearly amount to a fishing expedition: Cobalt is seeking to gain generic information regarding colocation data center customers. The responding party has no responsibility to provide Cobalt with this generic information that is not specifically related to any of the claims associated with this case, and should not be required to do so.

**Nevada Property1 ("Property1")**. Nevada Property1 is the owner and operator of the Cosmopolitan Resort. Cosmopolitan Resorts was a former customer of Switch. Cobalt has made no factual allegations or legal claims against Switch regarding Property1, and therefore its inclusion in the subpoena process is wholly inappropriate. The requests themselves are also specifically objectionable in the following ways:

- **Requests No. 1, 2, and 4 through 11** all seek documents that would almost certainly be in the possession of one or both of the parties to this litigation, and therefore will be produced during the regular course of discovery. The requests are therefore unduly burdensome to the responding party and, as a result, unduly burdensome to Switch.

- **Requests No. 4 through 11** seek documents that are confidential in nature. Specifically, they seek trade-secret documentation regarding agreements made between Property1 and Switch, information from Switch's policies and procedures, Switch's pricing, and other sensitive information regarding Switch. The subpoena makes no provision for the production of responsive documents pursuant to the parties' Stipulated Protective Order, and therefore will result in the unprotected production of these sensitive documents.

- **Requests No. 1, 2, and 4 through 14** are extremely vague, and will require the respondent to perform an undue amount of labor to determine what, if any, documents are responsive to these requests. This burden will likely have a negative impact on the relationship Property1 has with Switch. Furthermore, several of these requests clearly amount to a fishing expedition: Cobalt is seeking to gain generic information regarding colocation data center customers. The responding party has no responsibility to provide Cobalt with this generic information that is not specifically related to any of the claims associated with this case, and should not be required to do so.

**Opportunity Village**.  Opportunity Village is a philanthropic entity and a Switch customer. A Switch executive served on the board and Switch have been donating its services to show its support to the organizations. It is our understanding that Cobalt wished to charge Opportunity Village for these same services.  All of the factual allegations and legal claims made by Cobalt regarding Opportunity Village have to do with the entirely unsupported allegation that a member of Switch's board influenced Opportunity Village to terminate its relationship with Cobalt.  Any requests that fall outside of that scope are excessive and should be disallowed.  The requests themselves are also specifically objectionable in the following ways:

- **Requests No. 1 through 11 and 15** all seek documents that would almost certainly be in the possession of one or both of the parties to this litigation, and therefore will be produced during the regular course of discovery.  The requests are therefore unduly burdensome to the responding party and, as a result, unduly burdensome to Switch.

- **Requests No. 2 and 5 through 11** seek documents that are confidential in nature.  Specifically, they seek trade-secret documentation regarding agreements made between Opportunity Village and Switch, information from Switch's policies and procedures, Switch's pricing, and other sensitive information regarding Switch.  The subpoena makes no provision for the production of responsive documents pursuant to the parties' Stipulated Protective Order, and therefore will result in the unprotected production of these sensitive documents.

- **Requests No. 1 through 14** are extremely vague, and will require the respondent to perform an undue amount of labor to determine what, if any, documents are responsive to these requests.  This burden will likely have a negative impact on the relationship Opportunity Village has with Switch.  Furthermore, several of these requests clearly amount to a fishing expedition: Cobalt is seeking to gain generic information regarding colocation data center customers.  The responding party has no responsibility to provide Cobalt with this generic information that is not specifically related to any of the claims associated with this case, and should not be required to do so.

**Sandler Partners**.  As indicated above, Sandler Partners has brokered telecommunication and colocation deals for Switch.  Cobalt has made no factual allegations or legal claims against Switch regarding Sandler Partners, and therefore its inclusion in the

subpoena process is wholly inappropriate.  The requests themselves are also specifically objectionable in the following ways:

- **Requests No. 1 through 9** all seek documents that would almost certainly be in the possession of one or both of the parties to this litigation, and therefore will be produced during the regular course of discovery.  The requests are therefore unduly burdensome to the responding party and, as a result, unduly burdensome to Switch.

- **Requests No. 2, 4, 5, 8, and 9** seek documents that are confidential in nature.  Specifically, they seek trade-secret documentation regarding agreements made between Sandler Partners and Switch, information from Switch's policies and procedures, Switch's pricing, and other sensitive information regarding Switch.  The subpoena makes no provision for the production of responsive documents pursuant to the parties' Stipulated Protective Order, and therefore will result in the unprotected production of these sensitive documents.

- **Requests No. 10 through 12** are extremely vague, and will require the respondent to perform an undue amount of labor to determine what, if any, documents are responsive to these requests.  This burden will likely have a negative impact on the relationship Sandler Partners has with Switch.  Furthermore, several of these requests clearly amount to a fishing expedition: Cobalt is seeking to gain generic information regarding colocation data center customers.  The responding party has no responsibility to provide Cobalt with this generic information that is not specifically related to any of the claims associated with this case, and should not be required to do so.

**Silverback**.  Silverback is a vendor for Switch customers and assists Switch customers in migrating services to Switch facilities.  All of the factual allegations and legal claims made by Cobalt regarding Silverback have to do with the entirely unsupported allegation that Switch founder Rob Roy influenced Silverback to cancel its relationship with Cobalt.  Any requests that fall outside of that scope are excessive and should be disallowed.  The requests themselves are also specifically objectionable in the following ways:

- **Requests No. 1 through 10** all seek documents that would almost certainly be in the possession of one or both of the parties to this litigation, and therefore will be produced during the regular course of discovery.  The requests are therefore unduly burdensome to the responding party and, as a result, unduly burdensome to Switch.

- **Requests No. 2, 5, 6, 9, and 10** seek documents that are confidential in nature. Specifically, they seek trade-secret documentation regarding agreements made between Silverback and Switch, information from Switch's policies and procedures, Switch's pricing, and other sensitive information regarding Switch. The subpoena makes no provision for the production of responsive documents pursuant to the parties' Stipulated Protective Order, and therefore will result in the unprotected production of these sensitive documents.

- **Requests No. 11 through 12** are extremely vague, and will require the respondent to perform an undue amount of labor to determine what, if any, documents are responsive to these requests. This burden will likely have a negative impact on the relationship Silverback has with Switch. Furthermore, several of these requests clearly amount to a fishing expedition: Cobalt is seeking to gain generic information regarding colocation data center customers. The responding party has no responsibility to provide Cobalt with this generic information that is not specifically related to any of the claims associated with this case, and should not be required to do so.

**Technology Business Alliance of NV ("TBAN")**. When TBAN was still an operational entity, both Switch and TBAN worked toward increasing the profile of technology businesses in Nevada. TBAN is no longer an active entity. All of the factual allegations and legal claims made by Cobalt regarding TBAN have to do with the entirely unsupported allegation that Switch influenced TBAN to "exclude[] Cobalt's brokers" and to not allow Cobalt to sponsor TBAN events. Any requests that fall outside of that scope are excessive and should be disallowed. The requests themselves are also specifically objectionable in the following ways:

- **Requests No. 1 through 6** all seek documents that would almost certainly be in the possession of one or both of the parties to this litigation, and therefore will be produced during the regular course of discovery. The requests are therefore unduly burdensome to the responding party and, as a result, unduly burdensome to Switch.

- **Requests No. 2 and 6** seek documents that are confidential in nature. Specifically, they seek trade-secret documentation regarding agreements made between TBAN and Switch, information from Switch's policies and procedures, Switch's pricing, and other sensitive information regarding Switch. The subpoena makes no provision for the production of responsive documents pursuant to the parties' Stipulated Protective

16 of 20

Order, and therefore will result in the unprotected production of these sensitive documents.

- **Requests No. 7 and 8** are extremely vague, and will require the respondent to perform an undue amount of labor to determine what, if any, documents are responsive to these requests. These requests seek documentation regarding the positives of partnering with TBAN and the negatives of not partnering with TBAN. This essentially encompasses TBAN's entire marketing strategy, if not every document in TBAN's possession. If TBAN is required to produce all documents responsive to these requests, the burden will likely have a negative impact on the relationship TBAN has with Switch.

   **Zayo Group ("Zayo")**. Zayo is a carrier who provides bandwidth and connectivity for Switch and Switch customers. All of the factual allegations and legal claims made by Cobalt regarding Zayo have to do with a pre-existing marketing relationship between Switch and Zayo. Any requests that fall outside of that scope are excessive and should be disallowed. The requests themselves are also specifically objectionable in the following ways:

- **Requests No. 1 through 11, 13, and 14** all seek documents that would almost certainly be in the possession of one or both of the parties to this litigation, and therefore will be produced during the regular course of discovery. The requests are therefore unduly burdensome to the responding party and, as a result, unduly burdensome to Switch.

- **Requests No. 2 through 6 and 13 through 15** seek documents that are confidential in nature. Specifically, they seek trade-secret documentation regarding agreements made between Zayo and Switch, information from Switch's policies and procedures, Switch's pricing, and other sensitive information regarding Switch. The subpoena makes no provision for the production of responsive documents pursuant to the parties' Stipulated Protective Order, and therefore will result in the unprotected production of these sensitive documents.

- **Requests No. 12 and 16** are extremely vague, and will require the respondent to perform an undue amount of labor to determine what, if any, documents are responsive to these requests. This burden will likely have a negative impact on the relationship Zayo has with Switch.

**B.     At the very least, Cobalt's Subpoenas should be modified with regard to their overbroad scope and their lack of deference to the parties' Stipulated Protective Order.**

If this Court determines not to quash Cobalt's subpoenas in their entirety, it is clear that, significant modifications of each of the subpoenas is absolutely necessary. First, each subpoena should be modified to remove those requests that seek documents more easily obtained from either Switch or Cobalt, such as communications and agreements with the parties. Second, the unreasonable breadth of most of the requests should be limited, both with regard to time (Cobalt is currently seeking seven years of documents) and scope (e.g. Cobalt's requests for "ALL DOCUMENTS" regarding the generic search of "customers" for colocation data center services).

Finally, some modification of *all* of the subpoenas must occur in order to bring *any* documents produced in response thereto under the auspices of the Stipulated Protective Order. As mentioned above, Cobalt simply attached the protective order to each of its subpoenas, but made no other mention of it anywhere else in the text of the subpoenas. Cobalt provided no instructions as to how to the responding parties could comply with the protective order in their production of responsive documents. Without modifying the subpoenas to include this protection, Switch's sensitive, confidential, and trade-secret information will become part of the public record. At the very least, then, Cobalt's subpoenas need to be significantly modified before the responding parties can be required to produce documents in response thereto.

## 5.    Conclusion

Cobalt began this litigation at a time calculated to cause the most significant disruption to Switch: immediately prior to Switch's initial public offering. It is clear that Cobalt intended to annoy and harass Switch to induce a nuisance settlement. Cobalt's overbroad and unduly burdensome subpoenas to Switch's clients, vendors, and board members make it clear that Cobalt intends to continue this method of litigation. Switch itself is at risk from these subpoenas, both because of the undue burden that they will create with regard to Switch's business relationships and with regard to the public dissemination of its sensitive documents.

///

///

1    For these reasons, Switch respectfully requests an order to quash or, at the very least, modify

2    the subpoenas at issue.

3            DATED this 20th day of June, 2018.

4

5                                                          HUTCHISON & STEFFEN, LLC

6                                                          */s/ Jeffrey R. Hall*

7                                                          _____
                                                           Joseph S. Kistler (3458)
8                                                          Jeffrey R. Hall (9572)
                                                           Peccole Professional Park
9                                                          10080 West Alta Drive, Suite 200
                                                           Las Vegas, Nevada 89145
10                                                         Phone (702) 385-2500
                                                           Fax (702) 385-2086
11                                                         jkistler@hutchlegal.com
                                                           jhall@hutchlegal.com
12

13                                                         *Attorneys for Defendants*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

Pursuant to FED. R. CIV. P. 5(b), I certify that I am an employee of Hutchison & Steffen, PLLC and that on this 20th day of June, 2018 I caused the above and foregoing document entitled ***DEFENDANTS' MOTION TO QUASH OR MODIFY SUBPOENAS*** to be served as follows by personally transmitting a copy of same via the Court's CM/ECF Internet system to their respective registered email site.

/s/Danielle Kelley
An Employee of
Hutchison & Steffen, PLLC

INTENTIONALLY LEFT BLANK
EXHIBIT PAGE ONLY



# EXHIBIT A

| | |
|---|---|
| **From:** | David B. Rounds <drounds@neteffect.com> |
| **Sent:** | Wednesday, June 13, 2018 4:06 PM |
| **To:** | Jeffrey Hall; Jeff Grace |
| **Cc:** | sam@switch.com; abirk@switch.com |
| **Subject:** | RE: Subpoena for Cobalt lawsuit |

Mr. Hall and Mr. Castor,

Please respond with a copy of our contract with Switch.  This has been requested previously through conversations with Mr. Castor.  Please note the original contract should be listed under NetEffect Networks Inc, and potentially amended on or after July 1, 2014 due to our merger with then UptimeLV, Inc and NetEffect Networks Inc, to for NetEffect, LLC.

There are few items I think we should discuss:
1. Switch providing an amended contract for our services with Switch to provide MUTUAL identification against any further claims against Switch.
2. it is also worth mentioning that NetEffect, LLC is requesting reimbursement for any legal fees that will be incurred from responding to the Subpoena for the Cobalt lawsuit with Switch.
3. We are a small company in comparison to Switch, this will be a burdensome and costly process for us and believe that what we are asking for is both reasonable and fair.

Please keep us updated on any response to the letter you sent to the opposing counsel, and any motions to quash.  We have spoken to our legal counsel and will be sending a letter in response to the subpoena to notify them we will be waiting for the result of your request/motion.

Best regards,


David B. Rounds | President
Voice: 702-318-7700, ext. 502
Email: drounds@neteffect.com
Support Requests: support@neteffect.com
375 E. WarmSprings Road, Suite 102
Las Vegas, NV 89119
Need an appointment with me?  Click below to find an open slot, and then send me an invite!
http://bit.ly/2dvZiLi



---

**From:** Jeffrey Hall [mailto:JHall@hutchlegal.com]
**Sent:** Wednesday, June 13, 2018 1:25 PM
**To:** Jeff Grace <jgrace@neteffect.com>
**Cc:** David B. Rounds <drounds@neteffect.com>; sam@switch.com; abirk@switch.com
**Subject:** RE: Subpoena for Cobalt lawsuit

Jeff, thanks for taking the time to discuss this matter.  Attached is the letter we sent to Cobalt's counsel.  I also attached a copy of the subpoena for your convenience.  Again, we will be filing a motion to quash or modify the subpoena.

Feel free to have your legal counsel give me a buzz if he/she wants to discuss.  I'm also available if you have any further questions.

Thanks.

---

**From:** Jeff Grace [mailto:jgrace@neteffect.com]
**Sent:** Tuesday, June 12, 2018 5:59 PM
**To:** Jeffrey Hall <JHall@hutchlegal.com>
**Cc:** David B. Rounds <drounds@neteffect.com>; sam@switch.com; abirk@switch.com
**Subject:** RE: Subpoena for Cobalt lawsuit

Hi Jeff,

I'm Dave's partner, and can help in his absence this week. My contact info is below – please let me know how I can assist. I'm readily reachable by phone and email.

Regards,
Jeff

Jeff Grace | CEO
Voice: 702-318-7700, ext. 501
Email: jgrace@neteffect.com
Support Requests:support@neteffect.com
375 E. Warm Springs Road, Suite 102
Las Vegas, NV 89119



---

**From:** David B. Rounds
**Sent:** Tuesday, June 12, 2018 5:54 PM
**To:** Jeff Grace <jgrace@neteffect.com>
**Subject:** Fwd: Subpoena for Cobalt lawsuit


Please see what they need...


Sent from my Verizon, Samsung Galaxy smartphone


-------- Original message --------
From: Sam Castor <sam@switch.com>
Date: 6/12/18 11:44 AM (GMT-10:00)
To: "David B. Rounds" <drounds@neteffect.com>
Cc: Anne-Marie Birk <abirk@switch.com>, Jeffrey Hall <JHall@hutchlegal.com>
Subject: RE: Subpoena for Cobalt lawsuit

David,

I've copied Jeff Hall, our outside counsel.  I understand you're on vacation, so please reach out to him as soon as you get this.

**SAM CASTOR**
EVP OF POLICY
DEPUTY GENERAL COUNSEL

o  +1 (702) 444-4102
m  +1 (702) 371-0724
e  sam@switch.com
+  Switch e-card
We use e-cards to reduce waste of natural resources and promote sustainability.

---

**From:** Sam Castor
**Sent:** Wednesday, June 6, 2018 7:55 AM
**To:** David B. Rounds <drounds@neteffect.com>
**Cc:** Anne-Marie Birk <abirk@switch.com>
**Subject:** Re: Subpoena for Cobalt lawsuit

David,

I need to connect with outside counsel but as I mentioned, we are fully opposing the subpoenas and will do our best to contest the requests as we think they are duplicative and unduly burdensome. We are deeply sorrowed by opposing counsels tactics.  We view these requests as designed to harass and annoy you and Switch.  While we are using all efforts to fight this, please also feel free to secure your own legal advice.

Please excuse brevity and typos



**SAM CASTOR**
EVP OF POLICY
DEPUTY GENERAL COUNSEL

o  +1 (702) 444-4102
m  +1 (702) 371-0724
e  sam@switch.com

On Jun 5, 2018, at 2:48 PM, David B. Rounds <drounds@neteffect.com> wrote:

Sam,

You were going to send me an email?

Best regards,

David B. Rounds | President
Voice: 702-318-7700, ext. 502
Email:drounds@neteffect.com
Support Requests:support@neteffect.com
375 E. Warm Springs Road, Suite 102
Las Vegas, NV 89119
Need an appointment with me?  Click below to find an open slot, and then send me an invite!
http://bit.ly/2dvZiLi
<image001.png>

---

**From:** David B. Rounds
**Sent:** Thursday, May 31, 2018 4:55 PM
**To:** 'Sam@switch.com' <Sam@switch.com>
**Subject:** Subpoena for Cobalt lawsuit

Sam,

Please reach out to me ASAP regarding a Subpoena we received RE: Cobalt v Switch.

702.521.0980

Best regards,

David B. Rounds | President
Voice: 702-318-7700, ext. 502
Email:drounds@neteffect.com
Support Requests:support@neteffect.com
357 E. Warm Springs, Suite 102
Las Vegas, NV 89119
Need an appointment with me?  Click below to find an open slot, and then send me an invite!
http://bit.ly/2dvZiLi
<image001.png>

---

CONFIDENTIALITY AND DISCLAIMER NOTICE

This email and any files transmitted with it are confidential and legally privileged. This email is intended solely for the use of the individual or entity to whom it is addressed. If received in error please notify the sender by return email. Then delete this email from your system and destroy any hard copy print-outs. Access by any other person to this email is not authorized. Any unauthorized use or disclosure of this email

or of the information contained therein or any copying, distribution, dissemination of it is prohibited and illegal. Email into and out of our organization is scanned for viruses however, email transmission cannot be guaranteed to be secured, error free or virus free.

**CONFIDENTIAL INFORMATION**

This email message, its chain, and any attachments: (a) may include proprietary information, trade secrets, pending patents, confidential information and/or other protected information ("Confidential Information") which are hereby labeled as "Confidential" for protection purposes, (b) is sent to you in confidence with a reasonable expectation of privacy, (c) may be protected by confidentiality agreements requiring this notice and/or identification, and (d) is not intended for transmission to, or receipt by unauthorized persons. Your retention or possession will be viewed as your consent to the foregoing and covenant to comply with Switch's then current acceptable use policy available at www.switch.com/aup. If you are not the intended recipient, (i) please notify the sender immediately by telephone or by replying to this message and (ii) then delete this message, any attachments, chains, copies or portions from your system(s). Retention of this email and the associated data constitutes valid consideration and your consent, agreement and covenant to abide by the foregoing terms. Thank you.

CONFIDENTIALITY AND DISCLAIMER NOTICE

This email and any files transmitted with it are confidential and legally privileged. This email is intended solely for the use of the individual or entity to whom it is addressed. If received in error please notify the sender by return email. Then delete this email from your system and destroy any hard copy print-outs. Access by any other person to this email is not authorized. Any unauthorized use or disclosure of this email or of the information contained therein or any copying, distribution, dissemination of it is prohibited and illegal. Email into and out of our organization is scanned for viruses however, email transmission cannot be guaranteed to be secured, error free or virus free.

Jeffrey Hall
Partner



HUTCHISON & STEFFEN, PLLC
(702) 385-2500
hutchlegal.com

**Notice of Confidentiality:** The information transmitted is intended only for the person or entity to whom it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking any action in reliance upon, this information by anyone other than the intended recipient is not authorized.

CONFIDENTIALITY AND DISCLAIMER NOTICE

This email and any files transmitted with it are confidential and legally privileged. This email is intended solely for the use of the individual or entity to whom it is addressed. If received in error please notify the sender by return email. Then delete this email from your system and destroy any hard copy print-outs. Access by any other person to this email is not authorized. Any unauthorized use or disclosure of this email or of the information contained therein or any copying, distribution, dissemination of it is prohibited and illegal. Email into and out of our organization is scanned for viruses however, email transmission cannot be guaranteed to be secured, error free or virus free.