1  Mark Hutchison (4639)
   Jeffrey R. Hall (9572)
2  Chad Harrison (13888)
   HUTCHISON & STEFFEN, PLLC
3  Peccole Professional Park
   10080 West Alta Drive, Suite 200
4  Las Vegas, Nevada 89145
   Phone (702) 385-2500
5  Fax (702) 385-2086
   mhutchison@hutchlegal.com
6  jhall@hutchlegal.com
   charrison@hutchlegal.com
7  *Attorneys for Defendants/Counterclaimants*
8

9                    **UNITED STATES DISTRICT COURT**

10                      **CLARK COUNTY, NEVADA**

11   V5 TECHNOLGIES, LLC, d/b/a              Case No.:  2:17-cv-02349-KJD-NJK
     COBALT DATA CENTERS,
12          Plaintiff,
13   v.                                      **SWITCH, LTD'S ANSWER TO
                                             PLAINTIFF'S COMPLAINT AND
14                                           COUNTERCLAIM AGAINST V5
     SWITCH, LTD., a Nevada limited company, TECHNOLOGIES, LLC**
15          Defendant.
16
17   SWITCH, LTD., a Nevada limited company,
            Counterclaimant,
18
19   v.
20   V5 TECHNOLGIES, LLC, d/b/a
     COBALT DATA CENTERS,
21          Counter-Defendant.

22   **SWITCH, LTD'S ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM
23                   AGAINST V5 TECHNOLOGIES, LLC**

24          Defendant Switch, Ltd., et al ("Switch") (all other Switch Defendants having been

25   dismissed since the filing of the Complaint), by and through its counsel of record, Hutchison &

26   Steffen, PLLC, answer Plaintiff V5 Technologies, LLC, d/b/a Cobalt Data Centers' ("Cobalt")

27   Complaint (the "Complaint"), and bring the following Counterclaims against Cobalt.

28

# INTRODUCTION

1.      Answering paragraph 1, Defendant admit the allegations contained in said paragraph.

2.      Answering paragraph 2, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations

# NATURE OF THE ACTION

3.      Answering paragraph 3, Defendants deny the allegations contained in said paragraph.

4.      Answering paragraph 4, Defendants deny the allegations contained in said paragraph.

5.      Answering paragraph 5, Defendants deny the allegations contained in said paragraph.

6.      Answering paragraph 6, Defendants deny the allegations contained in said paragraph.

7.      Answering paragraph 7, Defendants deny the allegations contained in said paragraph.

8.      Answering paragraph 8, Defendants deny the allegations contained in said paragraph.

# THE PARTIES

9.      Answering paragraph 9, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

10.     Answering paragraph 10, Defendants admit the allegations contained in said paragraph.

11.     Answering paragraph 11, Defendant Switch Business Solutions, LLC has been dismissed from this lawsuit and, therefore, Defendants deny the allegations contained in said paragraph.

12. Answering paragraph 12, Defendant Switch Communications Group, LLC has been dismissed from this lawsuit and, therefore, Defendants deny the allegations contained in said paragraph.

13. Answering paragraph 13, Defendant Switch, Inc. has been dismissed from this lawsuit and, therefore, Defendants admit the allegations contained in said paragraph.

## JURISDICTION, VENUE, AND INTERSTATE COMMERCE

14. Answering paragraph 14, Defendants submit that said allegations call for a legal conclusion and/or interpretation and said allegations are not capable of admission or denial.

15. Answering paragraph 15, Defendants submit that said allegations call for a legal conclusion and/or interpretation and said allegations are not capable of admission or denial.

16. Answering paragraph 16, Defendants admit the allegations contained in said paragraph.

17. Answering paragraph 17, Defendants submit that said allegations call for a legal conclusion and/or interpretation and said allegations are not capable of admission or denial.

18. Answering paragraph 18, Defendants submit that said allegations call for a legal conclusion and/or interpretation and said allegations are not capable of admission or denial.

## FACTUAL AND INDUSTRY BACKGROUND

**A.    Colocation Data Centers**

19. Answering paragraph 19, Defendants deny the allegations contained in said paragraph.

20. Answering paragraph 20, Defendants deny the allegations contained in said paragraph.

21. Answering paragraph 21, Defendants deny the allegations contained in said paragraph.

22. Answering paragraph 22, Defendants deny the allegations contained in said paragraph.

23.     Answering paragraph 23, Defendants admit that "concurrent maintainability" is a significant factor considered by customers in choosing a colocation data center provider. Defendants deny the remaining allegations contained in said paragraph.

24.     Answering paragraph 24, Defendants admit that "concurrent maintainability" is a significant factor considered by customers in choosing a colocation data center provider. Defendants deny the remaining allegations contained in said paragraph.

25.     Answering paragraph 25, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

26.     Answering paragraph 26, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

27.     Answering paragraph 27, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

28.     Answering paragraph 28, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

29.     In response to paragraph 29, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

**B.      Switch**

30.     Answering paragraph 30, Defendants admit the allegations contained in said paragraph.

31.     Answering paragraph 31, Defendants deny the allegations contained in said paragraph.

**C.    Cobalt**

32.    Answering paragraph 32, Defendants deny the allegations contained in said paragraph.

33.    Answering paragraph 33, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

34.    Answering paragraph 34, Defendants deny the allegations contained in said paragraph.

35.    Answering paragraph 35, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

36.    Answering paragraph 36, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

37.    Answering paragraph 37, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

38.    Answering paragraph 38, Defendants deny the allegations contained in said paragraph.

39.    Answering paragraph 39, Defendants deny the allegations contained in said paragraph.

40.    Answering paragraph 40, Defendants deny the allegations contained in said paragraph.

41.    Answering paragraph 41, Defendants deny the allegations contained in said paragraph.

/ / /

/ / /

## SWITCH'S TORTIOUS AND EXCLUSIONARY SCHEME

42.     Answering paragraph 42, Defendants deny the allegations contained in said paragraph.

43.     Answering paragraph 43, Defendants deny the allegations contained in said paragraph.

44.     Answering paragraph 44, Defendants deny the allegations contained in said paragraph.

45.     Answering paragraph 45, Defendants deny the allegations contained in said paragraph.

46.     Answering paragraph 46, Defendants deny the allegations contained in said paragraph.

47.     Answering paragraph 47, Defendants deny the allegations contained in said paragraph.

48.     Answering paragraph 48, Defendants deny the allegation that Switch's AUP had an "anticompetitive purpose" and submits that the document speaks for itself.

49.     Answering paragraph 49, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

50.     Answering paragraph 50, Defendants submit that the referenced document speaks for itself.  Defendants deny any allegations contained in said paragraph that are inconsistent with the referenced document.

51.     Answering paragraph 51, Defendants submit that the referenced documents speak for themselves.

52.     Answering paragraph 52, Defendants deny the allegations contained in said paragraph.

53.     Answering paragraph 53, Defendants deny the allegations contained in said paragraph.

54.     Answering paragraph 54, Defendants deny the allegations contained in said paragraph.

55.     Answering paragraph 55, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

56.     Answering paragraph 56, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

57.     Answering paragraph 57, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

58.     Answering paragraph 58, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

59.     Answering paragraph 59, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

60.     Answering paragraph 60, Defendants deny the allegations contained in said paragraph.

61.     Answering paragraph 61, Defendants deny the allegations contained in said paragraph.

62.     Answering paragraph 62, Defendants deny the allegations contained in said paragraph.

63.     Answering paragraph 63, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

64. Answering paragraph 64, Defendants deny the allegations contained in said paragraph.

65. Answering paragraph 65, Defendants deny the allegations contained in said paragraph.

66. Answering paragraph 66, Defendants deny the allegations contained in said paragraph.

67. Answering paragraph 67, Defendants deny the allegations contained in said paragraph.

68. Answering paragraph 68, Defendants deny the allegations contained in said paragraph.

69. Answering paragraph 69, Defendants deny the allegations contained in said paragraph.

70. Answering paragraph 70, Defendants deny the allegations contained in said paragraph.

71. Answering paragraph 71, Defendants deny the allegations contained in said paragraph.

72. Answering paragraph 72, Defendants deny the allegations contained in said paragraph.

73. Answering paragraph 73, Defendants deny the allegations contained in said paragraph.

74. Answering paragraph 74, Defendants deny the allegations contained in said paragraph.

75. Answering paragraph 75, Defendants deny the allegations contained in said paragraph.

76. Answering paragraph 76, Defendants deny the allegations contained in said paragraph.

77.    Answering paragraph 77, Defendants deny the allegations contained in said paragraph.

78.    Answering paragraph 78, Defendants deny the allegations contained in said paragraph.

79.    Answering paragraph 79, Defendants deny the allegations contained in said paragraph.

80.    Answering paragraph 80, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

81.    Answering paragraph 81, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

82.    Answering paragraph 82, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

83.    Answering paragraph 83, Defendants deny the allegations contained in said paragraph.

84.    Answering paragraph 84, Defendants deny the allegations contained in said paragraph.

85.    Answering paragraph 85, Defendants deny the allegations contained in said paragraph.

86.    Answering paragraph 86, Defendants deny the allegations contained in said paragraph.

87.    Answering paragraph 87, Defendants admit the allegations contained in said paragraph, but deny that the alleged behavior was a "pretext."

88.    Answering paragraph 88, Defendants deny the allegations contained in said paragraph.

89.   Answering paragraph 89, Defendants deny the allegations contained in said paragraph.

90.   Answering paragraph 90, Defendants deny the allegations contained in said paragraph.

91.   Answering paragraph 91, Defendants deny the allegations contained in said paragraph.

92.   Answering paragraph 92, Defendants deny the allegations contained in said paragraph.

93.   Answering paragraph 93, Defendants deny the allegations contained in said paragraph.

## THE RELEVANT MARKET

94.   Answering paragraph 94, Defendants deny the allegations contained in said paragraph.

**A.    Colocation Data Centers**

95.   Answering paragraph 95, Defendants deny the allegations contained in said paragraph.

96.   Answering paragraph 96, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

97.   Answering paragraph 97, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

98.   Answering paragraph 98, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

/ / /

/ / /

99.     Answering paragraph 99, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

100.     Answering paragraph 100, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

101.     Answering paragraph 101, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

102.     Answering paragraph 102, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

103.     Answering paragraph 103, Defendants deny the allegations contained in said paragraph.

104.     Answering paragraph 104, Defendants deny the allegations contained in said paragraph.

105.     Answering paragraph 105, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

**B.     The Relevant Geographic Market: Las Vegas Metropolitan Area**

106.     Answering paragraph 106, Defendants deny the allegations contained in said paragraph.

107.     Answering paragraph 107, Defendants deny the allegations contained in said paragraph.

108.     Answering paragraph 108, Defendants deny the allegations contained in said paragraph.

109.   Answering paragraph 109, Defendants deny the allegations contained in said paragraph.

110.   Answering paragraph 110, Defendants admit the allegations contained in said paragraph.

111.   Answering paragraph 111, Defendants admit that the "U.S. Safety Zone" designation regarding Las Vegas helps make it an attractive location for a data center, but denies all other allegations contained in said paragraph.

112.   Answering paragraph 112, Defendants admit that Las Vegas is well-suited as a location for colocation data center services for many reasons including some of those alleged in this paragraph.  However, Defendants deny that colocation data centers in Las Vegas are so uniquely situated that they do not compete with colocation data centers located throughout the Southwest, the United States, and globally.

113.   Answering paragraph 113, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

114.   Answering paragraph 114, Defendants deny the allegations contained in said paragraph.

115.   Answering paragraph 115, Defendants deny the allegations contained in said paragraph.

116.   Answering paragraph 116, Defendants deny the allegations contained in said paragraph.

117.   Answering paragraph 117, Defendants deny the allegations contained in said paragraph.

118.   Answering paragraph 118, Defendants deny the allegations contained in said paragraph.

/ / /

/ / /

119.     Answering paragraph 119, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

120.     Answering paragraph 120, Defendants deny the allegations contained in said paragraph.

**C.     Relevant Marketplace Participants**

121.     Answering paragraph 121, Defendants deny the allegations contained in said paragraph.

122.     Answering paragraph 122, Defendants deny the allegations contained in said paragraph.

123.     Answering paragraph 123, Defendants deny the allegations contained in said paragraph.

124.     Answering paragraph 124, Defendants deny the allegations contained in said paragraph.

**SWITCH'S MONOPOLY POWER**

125.     Answering paragraph 125, Defendants deny the allegations contained in said paragraph.

126.     Answering paragraph 126, Defendants deny the allegations contained in said paragraph.

127.     Answering paragraph 127, Defendants deny the allegations contained in said paragraph.

128.     Answering paragraph 128, Defendants deny the allegations contained in said paragraph.

129.     Answering paragraph 129, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

130.    Answering paragraph 130, Defendants deny the allegations contained in said paragraph.

131.    Answering paragraph 131, Defendants deny the allegations contained in said paragraph.

132.    Answering paragraph 132, Defendants deny the allegations contained in said paragraph.

133.    Answering paragraph 133, Defendants deny the allegations contained in said paragraph.

134.    Answering paragraph 134, Defendants deny the allegations contained in said paragraph.

**SWITCH'S ANTICOMPETITIVE CONDUCT HAS STIFLED COMPETITION IN THE RELEVANT MARKET, THEREBY EXTENDING SWITCH'S MONOPOLY POWER AND INJURING CONSUMERS AND COMPETITORS**

135.    Answering paragraph 135, Defendants deny the allegations contained in said paragraph.

136.    Answering paragraph 136, Defendants deny the allegations contained in said paragraph.

137.    Answering paragraph 137, Defendants deny the allegations contained in said paragraph.

138.    Answering paragraph 138, Defendants deny the allegations contained in said paragraph.

139.    Answering paragraph 139, Defendants deny the allegations contained in said paragraph.

140.    Answering paragraph 140, Defendants deny the allegations contained in said paragraph.

141.    Answering paragraph 141, Defendants deny the allegations contained in said paragraph.

142.    Answering paragraph 142, Defendants deny the allegations contained in said paragraph.

143.    Answering paragraph 143, Defendants deny the allegations contained in said paragraph.

144.    Answering paragraph 144, Defendants admit the allegations contained in said paragraph.

145.    Answering paragraph 145, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

146.    Answering paragraph 146, Defendants deny the allegations contained in said paragraph.

# FIRST CLAIM FOR RELIEF
### (Violation of 15 U.S.C § 2 - Monopolization)

147.    In response to paragraph 147, Defendants repeat and reallege their responses to the allegations contained in paragraphs 1 through 146 of Plaintiff's complaint and incorporate the same as if set forth in full.

148.    Answering paragraph 148, Defendants deny the allegations contained in said paragraph.

149.    Answering paragraph 149, Defendants deny the allegations contained in said paragraph.

150.    Answering paragraph 150, Defendants deny the allegations contained in said paragraph.

151.    Answering paragraph 151, Defendants deny the allegations contained in said paragraph.

152.    Answering paragraph 152, Defendants deny the allegations contained in said paragraph.

153. Answering paragraph 153, Defendants deny the allegations contained in said paragraph.

154. Answering paragraph 154, Defendants deny the allegations contained in said paragraph.

## SECOND CLAIM FOR RELIEF
### (Violation of 15 U.S.C § 2 – Attempted Monopolization)

155. In response to paragraph 155, Defendants repeat and reallege their responses to the allegations contained in paragraphs 1 through 154 of Plaintiff's complaint and incorporate the same as if set forth in full.

156. Answering paragraph 156, Defendants deny the allegations contained in said paragraph.

157. Answering paragraph 157, Defendants deny the allegations contained in said paragraph.

158. Answering paragraph 158, Defendants deny the allegations contained in said paragraph.

159. Answering paragraph 159, Defendants deny the allegations contained in said paragraph.

160. Answering paragraph 160, Defendants deny the allegations contained in said paragraph.

161. Answering paragraph 161, Defendants deny the allegations contained in said paragraph.

162. Answering paragraph 162, Defendants deny the allegations contained in said paragraph.

163. Answering paragraph 163, Defendants deny the allegations contained in said paragraph.

/ / /

/ / /

**THIRD CLAIM FOR RELIEF**
**(Violation of 15 U.S.C § 1 – Agreements in Restraint of Trade)**

164.    In response to paragraph 164, Defendants repeat and reallege their responses to the allegations contained in paragraphs 1 through 163 of Plaintiff's complaint and incorporate the same as if set forth in full.

165.    Answering paragraph 165, Defendants deny the allegations contained in said paragraph.

166.    Answering paragraph 166, Defendants deny the allegations contained in said paragraph.

167.    Answering paragraph 167, Defendants deny the allegations contained in said paragraph.

168.    Answering paragraph 168, Defendants deny the allegations contained in said paragraph.

169.    Answering paragraph 169, Defendants deny the allegations contained in said paragraph.

170.    Answering paragraph 170, Defendants deny the allegations contained in said paragraph.

171.    Answering paragraph 171, Defendants deny the allegations contained in said paragraph.

**FOURTH CLAIM FOR RELIEF**
**(Violation of Nev. Rev. Stat. § 598A.060 - Monopolization)**

172.    In response to paragraph 172, Defendants repeat and reallege their responses to the allegations contained in paragraphs 1 through 171 of Plaintiff's complaint and incorporate the same as if set forth in full.

173.    Answering paragraph 173, Defendants deny the allegations contained in said paragraph.

174.    Answering paragraph 174, Defendants deny the allegations contained in said paragraph.

175.    Answering paragraph 175, Defendants deny the allegations contained in said paragraph.

176.    Answering paragraph 176, Defendants deny the allegations contained in said paragraph.

177.    Answering paragraph 177, Defendants deny the allegations contained in said paragraph.

178.    Answering paragraph 178, Defendants deny the allegations contained in said paragraph.

179.    Answering paragraph 179, Defendants deny the allegations contained in said paragraph.

## FIFTH CLAIM FOR RELIEF
### (Violation of Nev. Rev. Stat. § 598A.060 – Attempted Monopolization)

180.    In response to paragraph 180, Defendants repeat and reallege their responses to the allegations contained in paragraphs 1 through 179 of Plaintiff's complaint and incorporate the same as if set forth in full.

181.    Answering paragraph 181, Defendants deny the allegations contained in said paragraph.

182.    Answering paragraph 182, Defendants deny the allegations contained in said paragraph.

183.    Answering paragraph 183, Defendants deny the allegations contained in said paragraph.

184.    Answering paragraph 184, Defendants deny the allegations contained in said paragraph.

185.    Answering paragraph 185, Defendants deny the allegations contained in said paragraph.

186.    Answering paragraph 186, Defendants deny the allegations contained in said paragraph.

187.    Answering paragraph 187, Defendants deny the allegations contained in said paragraph.

188.    Answering paragraph 188, Defendants deny the allegations contained in said paragraph.

## SIXTH CLAIM FOR RELIEF
### (Violation of Nev. Rev. Stat. § 598A.060 – Agreements in Restraint of Trade)

189.    In response to paragraph 189, Defendants repeat and reallege their responses to the allegations contained in paragraphs 1 through 188 of Plaintiff's complaint and incorporate the same as if set forth in full.

190.    Answering paragraph 190, Defendants deny the allegations contained in said paragraph.

191.    Answering paragraph 191, Defendants deny the allegations contained in said paragraph.

192.    Answering paragraph 192, Defendants deny the allegations contained in said paragraph.

193.    Answering paragraph 193, Defendants deny the allegations contained in said paragraph.

194.    Answering paragraph 194, Defendants deny the allegations contained in said paragraph.

195.    Answering paragraph 195, Defendants deny the allegations contained in said paragraph.

196.    Answering paragraph 196, Defendants deny the allegations contained in said paragraph.

/ / /

/ / /

## SEVENTH CLAIM FOR RELIEF
### (Intentional Interference with Contractual Relations)

197.    In response to paragraph 197, Defendants repeat and reallege their responses to the allegations contained in paragraphs 1 through 196 of Plaintiff's complaint and incorporate the same as if set forth in full.

198.    Answering paragraph 198, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

199.    Answering paragraph 199, Defendants deny the allegations contained in said paragraph.

200.    Answering paragraph 200, Defendants deny the allegations contained in said paragraph.

201.    Answering paragraph 201, Defendants deny the allegations contained in said paragraph.

202.    Answering paragraph 202, Defendants deny the allegations contained in said paragraph.

203.    Answering paragraph 203, Defendants deny the allegations contained in said paragraph.

204.    Answering paragraph 204, Defendants deny the allegations contained in said paragraph.

## EIGHTH CLAIM FOR RELIEF
### (Intentional Interference with Prospective Economic Advantage)

205.    In response to paragraph 205, Defendants repeat and reallege their responses to the allegations contained in paragraphs 1 through 204 of Plaintiff's complaint and incorporate the same as if set forth in full.

/ / /

/ / /

206.     Answering paragraph 206, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in said paragraph and, therefore, deny the allegations contained therein.

207.     Answering paragraph 207, Defendants deny the allegations contained in said paragraph.

208.     Answering paragraph 208, Defendants deny the allegations contained in said paragraph.

209.     Answering paragraph 209, Defendants deny the allegations contained in said paragraph.

210.     Answering paragraph 210 Defendants deny the allegations contained in said paragraph.

211.     Answering paragraph 210 Defendants deny the allegations contained in said paragraph.

## GENERAL DENIAL

Defendants generally deny each and every allegation set forth in Plaintiff's complaint not specifically admitted herein.  Defendants further generally deny that Plaintiff has sustained any injury, damage, or loss by reason of any act or omission on the part of Defendants.  In addition, without admitting any allegations contained in the Complaint, Defendants assert the following Affirmative Defenses based on information and belief.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Each and every claim of Plaintiff's complaint fails to state a claim against Defendants upon which relief may be granted.

/ / /

/ / /

/ / /

/ / /

**SECOND AFFIRMATIVE DEFENSE**

To the extent that Plaintiff was competing in the same market as Defendant, Defendant was engaged in normal and justifiable business competition with Plaintiff, and did not engage in any anti-competitive behavior. At all times, Defendant had legitimate business and procompetitive justifications for its conduct.

**THIRD AFFIRMATIVE DEFENSE**

Plaintiff has failed to mitigate its damages, if any.

**FOURTH AFFIRMATIVE DEFENSE**

The complaint, and each cause of action, must fail against Defendants because they fulfilled their duties as provided by law.

**FIFTH AFFIRMATIVE DEFENSE**

Any harm suffered by Plaintiff was not caused by any conduct on the part of Defendants.

**SIXTH AFFIRMATIVE DEFENSE**

All damages alleged by Plaintiff are speculative, and therefore unrecoverable.

**SEVENTH AFFIRMATIVE DEFENSE**

Plaintiff failed to plead each of the causes of action alleged in the complaint with the necessary elements and particularity required by law.

**EIGHTH AFFIRMATIVE DEFENSE**

Defendants allege that the damages, if any, were caused in whole or in part, or were contributed to by Plaintiff's and/or another third-party's wrongful conduct and/or negligence.

**NINTH AFFIRMATIVE DEFENSE**

Plaintiff is not entitled to attorney fees or costs.

**TENTH AFFIRMATIVE DEFENSE**

Plaintiff was not damaged by any actions of Defendants.

**ELEVENTH AFFIRMATIVE DEFENSE**

Plaintiff fails to state a claim upon which exemplary/punitive damages may be awarded.

/ / /

1

### TWELFTH AFFIRMATIVE DEFENSE

2       It has been necessary for Defendants to employ the services of an attorney to defend this

3   action and a reasonable sum should be allowed Defendants as and for attorney fees, together with

4   its costs expended in defending this action.

5

### THIRTEENTH AFFIRMATIVE DEFENSE

6       No claims for punitive damages or other non-compensatory damages are appropriate

7   against Defendants. Because of the possibility of treble damages, plaintiff is not also entitled to

8   punitive damages.

9

### FOURTEENTH AFFIRMATIVE DEFENSE

10       Plaintiff breached a contractual relationship among the parties, which breach excuses any

11   failure to perform on the part of Defendants.

12

### FIFTEENTH AFFIRMATIVE DEFENSE

13       Plaintiff's alleged damages are duplicative of other claims.

14

### SIXTEENTH AFFIRMATIVE DEFENSE

15       Plaintiff lacks antitrust standing.

16

### SEVENTEENTH AFFIRMATIVE DEFENSE

17       Plaintiff's alleged injury is too remote.

18

### EIGHTEENTH AFFIRMATIVE DEFENSE

19       Plaintiff's own unclean hands bars it from recovery.

20

### NINETEENTH AFFIRMATIVE DEFENSE

21       Plaintiff's claims are barred by the governing statutes of limitations.

22

### TWENTIETH AFFIRMATIVE DEFENSE

23       Defendant had immunity for its actions pursuant to the *Noerr-Pennington* doctrine.

24

### TWENTY FIRST AFFIRMATIVE DEFENSE

25       Defendants hereby incorporates by reference those affirmative defenses enumerated in

26   Rule 8 of the Federal Rules of Civil Procedure as if fully set forth herein.  In the event further

27   investigation or discovery reveals the applicability of any such defenses, Defendants reserves the

28

1  right to seek leave of court to amend this answer to specifically assert any such defense.  Such

2  defenses are herein incorporated by reference for the specific purpose of not waiving any such

3  defense.

4  **PRAYER FOR RELIEF**

5  1.      That the Court enter judgment in favor of Defendants;

6  2.      That Plaintiff takes nothing by its Complaint;

7  3.      That the Court award Defendants their costs and attorney fees incurred in

8  connection with this action; and

9  4.      For such other and further relief as the Court deems just and proper.

10  DATED this 12th day of October, 2018.

11

12                                                        HUTCHISON & STEFFEN, LLC

13                                                        */s/ Jeffrey R. Hall*

14                                                        _____
                                                          Mark Hutchison (4639)
15                                                        Jeffrey R. Hall (9572)
                                                          Chad Harrison (13888)
16                                                        Peccole Professional Park
                                                          10080 West Alta Drive, Suite 200
17                                                        Las Vegas, Nevada 89145
                                                          Phone (702) 385-2500
18                                                        Fax (702) 385-2086
                                                          mhutchison@hutchlegal.com
19                                                        jhall@hutchlegal.com
                                                          charrison@hutchlegal.com
20

21                                                        *Attorneys for Defendants/Counterclaimants*

22

23

24

25

26

27

28

# COUNTERCLAIM

Defendant and Counterclaimant Switch, Ltd. ("Switch"), by and through its counsel of record, Hutchison & Steffen, PLLC, hereby complains and alleges against Counter-Defendant V5 Technologies, LLC, d/b/a Cobalt Data Centers' ("Cobalt") as follows:

## PARTIES AND JURISDICTION

1.      Counterclaimant Switch is a limited liability company organized and existing under the laws of the state of Nevada with its headquarters and principal place of business in Las Vegas, Nevada.

2.      Counter-Defendant Cobalt is a limited liability company organized and existing under the laws of the state of Nevada. Cobalt's headquarters and principal place of business are located in Las Vegas, Nevada.

## GENERAL ALLEGATIONS

1.      Switch opened its doors in Las Vegas in early 2000, with the mission of building state of the art data centers that power, cool, and connect the global internet, for customers worldwide.

2.      At its core, Switch is the infrastructure heart of the internet.  Switch provides the physical buildings, cooling, power, and networks that support the internet of everything, for customers ranging from Google, Amazon, Intel, Google, and Disney, to banks, hospitals and governments.

3.      Switch's founder, Rob Roy, saw the future need to connect, power, cool and protect the computers, servers, and networks, that make up the digital world.  To that end, Mr. Roy has secured over 550 patent and patent pending claims around Switch's technologies.

4.       His intent was to provide the building, cooling, power, bandwidth and physical security to customers to house their data servers; without a customer ever experiencing a loss of power, cooling, or connectivity known as "downtime".

5.      A moment of downtime can result in a complete loss of services for days or even weeks.  This downtime can cause significant loss of revenue and damage to a customer brand.

Accordingly, Mr. Roy's designs and trade secrets have ensured that Switch's data centers have not had a moment of "downtime" since its inception.

6.      In other words, Switch has never lost power, cooling, connectivity or physical security, even if the local power company has lost power.

7.      Given this reputation, and Mr. Roy's innovative technologies, Switch has evolved into a global industry leader and created a technology infrastructure ecosystem made up of the most advanced data centers and most powerful technologies, with some of the world's largest businesses.

8.      Additionally, Switch's innovative technologies have allowed Switch to build and operate their data centers more reliably and at dramatically more cost-efficient margins than their competitors.

9.      Independent third parties have validated Switch's unique global position.

10.     Switch's facilities have been ranked above those of Google, Apple, Facebook, Microsoft and others.

11.     Additionally, Switch has received various awards for its campus, sustainability, and cloud offerings, ahead of industry leaders like Apple, Facebook, Google, Equinix, and others.

12.     Moreover, the Uptime Institute, a recognized authority on certifying data center facilities worldwide for design, construction, management, and operations has found Switch meets and exceeds its "Uptime" standards for constant power and cooling of internet technology.

13.     The Uptime Institute has certified Switch's Las Vegas facilities as Tier IV Gold, the highest rating attainable from Uptime, twice.  No other colocation data center provider in the world has done so.

14.     The Uptime Institute's ratings are based largely on concurrent maintainability – meaning that Switch's facilities have no single points of failure.  Further, Switch's facilities are fully functional even when planned maintenance or upgrades of their systems are happening.

15.     Switch contractually guarantees its clients will experience continuous uptime and backs that promise with a stringent service level agreement and money back guarantee.

16.     Taking their commitment to resiliency and sustainability even further, and desirous to provide even more transparency into the superiority of its technologies, Switch developed a new standard above and beyond the Uptime Standards, creating the "Tier 5 Platinum" standards.  Tier 5 Platinum incorporates additional standards regarding energy sustainability, physical security, telecommunication interconnectivity, physical facility, and locational safety, as well as Uptime's power and cooling standards.  Switch's Tier 5 Platinum standard is available at www.switch.com/tier-5.

17.     Currently, Switch operates colocation facilities in Las Vegas, Reno, and Grand Rapids, Michigan.  It is also constructing a hyper-scale facility in Atlanta, Georgia.

18.     Switch's Las Vegas campus, consists of over 2.3 million square feet of capacity making it among the largest data center campuses (if not the single largest data centers) in the world[1].

19.     Switch's Grand Rapids campus has almost 700,000 square feet of capacity and will have almost 2 million square feet once fully built out.

20.     Switch's Reno campus has 1.4 million square feet of capacity and will have nearly 7 million square feet of capacity; making Switch's Reno campus even larger than the Las Vegas campus, and current largest data center campus in the world.

21.     At these facilities, Switch provides its customers unparalleled resiliency and continuous uptime as well as innovative solutions allowing customers to efficiently and securely store their data with worldwide connectivity.

**The Global Data Center Market**

22.     The data center industry is an extremely competitive, world-wide market comprised of numerous businesses vying for market share.  Only a few large competitors have more than a 5% share of the market, including Equinix, Digital Realty, NTT Data, Century Link (Cyxtera), Cyrus One, and a few others.  Switch does not.

---

[1] https://www.cbronline.com/data-centre/top-10-biggest-data-centres-from-around-the-world-4545356/

23.     Equinix, the market leader, maintains over 180 data centers in more than 44 metropolitan areas and has the largest global market share.

24.     During the times that Cobalt was a competitor in the national and global colocation data center market, Cobalt acknowledged it was not a competitor with Switch because Switch's facilities were demonstrably superior to Cobalt's.

25.     Switch had and has numerous certifications in addition to the Tier IV Gold certification provided by Uptime, and won numerous awards.

26.     Cobalt, on the other hand, had no "tier" certifications.

27.     By Cobalt's own admissions, Cobalt and Switch were *not* competitors.

28.     Yet, Cobalt's Complaint attempts to define the relevant geographic market as being the limited Las Vegas Metropolitan Area.  This is self-servingly myopic.  The colocation data center market is a national and global market.  Moreover, given the national and global scale of the data center market, but for Switch's presence in the Las Vegas Metropolitan Area, Vegas would not be a relevant geographic market in this space.

29.     By its very nature, the colocation data center market is global. The colocation market initially grew to support businesses reliance on the world wide web.  A data center is designed to support customers' servers and data with world-wide inter-connection and access to hard drives and clouds.

30.     Suggesting the market for data centers is geographically specific is like defining a mass media market by where companies headquarter their production studios. Although movies may be made in Hollywood the relevant market for movie studios is global.  Data centers, the infrastructure backbones that power such mass communication, are no less globally minded.  This is why Switch has customers from all over the nation and all over the world.

/ / /

/ / /

/ / /

/ / /

**Customer Choice**

31.     Data Center customers choose data centers to serve various needs.  However, all customers have one goal, interconnectivity with the world-wide web.  Suggesting that data center customers only want their data in the data center's broader metropolitan area is illogical to the purpose of a data center.  The internet allows data to be transported anywhere in the world almost instantaneously.  Its utility is that it knows no geographic boundaries.

32.     Therefore, a potential Switch customer is not relegated to choosing Las Vegas as its sole choice to house its data, whether that customer is located in Las Vegas or anywhere else.  Rather, a potential Switch customer must decide that the services provided by Switch in Las Vegas are demonstrably preferable to those provided by dozens if not hundreds of competing colocation data centers located all over the nation, and the world.

33.     More important that geographic location, data center customers, consider the quality and cost of services, internet connectivity, security, and the energy sustainability of operations to name a few, as compared to the offerings provided by Switch's competitors.

34.     Accordingly, Switch promotes its status as the leading technology company in various verticals.  Switch has the world's only Tier 5 Platinum data centers.  Switch has the most robust telecommunications offerings in the United States, if not the world.  Switch is the most "green" (aka sustainable) technology company according to Green Peace's 2017 Clicking Clean report.  Switch offers the most robust physical security with armed guards.  Moreover, Switch notes that because of its scale, it can offer these services at the cost of otherwise inferior and incomparable data centers.

35.     Switch does this because when a company located in Southern California is looking for a data center, they have hundreds of options to choose from, including data centers in Southern California and outside of Southern California, Arizona, Oregon, Utah, and Nevada, Texas, Virginia, and elsewhere.  Nothing requires a company to collocate its data in its own geographic region or anywhere else for that matter.  A company could consider a multitude of data storage centers from any number of geographic locations throughout the United States and

globally.  This is why companies often pick multiple geographically diverse locations for disaster recovery purposes.

36.     In fact, it is mostly due to Switch's own efforts that Nevada is even a part of the world-wide market for data centers.  Without material changes to Nevada's infrastructure, tax, regulatory, and energy policies, (championed and paid for by Switch) data centers would not be able to participate in the world-wide marketplace or compete with national and international companies.

37.     Switch spearheaded necessary changes to Nevada economic incentives, as well as tax and energy laws, which benefited all Nevada data centers including Cobalt, and ViaWest and allowed Nevada to now compete with the rest of the world for data center business.

38.     Cobalt acknowledge that Switch and Cobalt are not competitors.  Cobalt's CEO, Jefferson Brown, stated that Cobalt competed with colocation data centers in locations such as California or Phoenix.  In an article for Vegas Seven on July 15, 2014, Brown stated:

 "Rather than placing critical infrastructure in Silicon Valley, which has expensive real estate, expensive power and is very close to all those companies like Facebook and Disney, let's get that into a [more economic friendly] environment where there is low risk of natural disasters like earthquakes.  We have a little marketing slogan: "Get your critical infrastructure off the fault line once and for all."  "Bring it out of California, but you don't have to go all the way to Dallas."

39.     Brown went on to state that places like Las Vegas, Salt Lake City and Phoenix have become more attractive for placing critical infrastructure to go serve that big economy in California; not just Las Vegas.

40.     Brown further stated that if Cobalt was competing for business and the customer looked to Phoenix or Las Vegas, sometimes they would pick Phoenix because of the negative perception of Las Vegas.

41.     Brown admits that the colocation service providers in these markets are competing for the same customers in California and Phoenix, at a minimum, which directly contradicts Cobalt's contention that organizations looking to put their critical computing infrastructure in the

1  Las Vegas market do not consider data centers outside of the Las Vegas market to be reasonably

2  interchangeable.

3      42.    Even today, Switch must convince a customer that the service it provides is

4  superior *and* at an competitive cost when compared to the offerings of competitors nationally,

5  including competing data centers in Las Vegas like ViaWest (aka Flexential), and competitors in

6  the surrounding United States.  Las Vegas is simply once city in a broad array of cities in a

7  national market for colocation services.

8      43.    For example, Equinix, the company with the largest national and global data center

9  market share, has five different data centers in the Los Angeles area, seventeen data centers in the

10  Silicon Valley area, two data centers in the Denver area and three data centers in the Seattle area,

11  just to name a few of their locations in the Western United States.

12      44.    If Switch is to attract new customers to its Las Vegas facilities, it unquestionably

13  competes with Equinix's numerous data centers, including those mentioned above.  In order to

14  obtain a potential customer's business, Switch competes with Equinix and a host of other data

15  center service providers from all over.  To gain competitive advantage, Switch must differentiate

16  itself.  Switch must rely on its patented technology, superior services, quality of facilities,

17  sustainability policies, robust connectivity, and lower cost offerings to attract customers.

18      45.    Yet, even as an innovator and leader in providing colocation services, Switch's

19  profit margins have continuously decreased as the nation-wide and world-wide market has grown

20  more competitive.  These trends existed long before Cobalt started and continue to exist after

21  Cobalt went out of business.  The simple fact is that the competition for customers in the data

22  storage space is fierce across geographic lines, all to the benefit of consumers.

23      46.    Cobalt references a blog from Sean Tario in its Complaint that discusses Cobalt's

24  Cheyenne facility, but also discusses Switch.  In reference to Switch, Tario states:

25          SwitchNAP was most definitely impressive and lived up to the hype… though I
           was disappointed not seeing the remote activated turret guns I know someone
26          mentioned to me over the past few years… To sum up the security they have in
           place, I'll just say the liability insurance these guys must pay to have so many
27          armed guards must be ridiculous. Richard Weltmer toured us through the facility
28

like a pro, clearly having performed this tour over 100 times. Redundancy was solid across the board, high density was no issue, lots of room for growth, smart hands available if/as needed… long story short, if I needed to be in Las Vegas, had the money to pay the premium for space and power, or simply had massive network needs to offset this premium (as network in/out of their facility can get extremely inexpensive as one scales), I wouldn't hesitate deploying my production environment in SwitchNAP.

47.      With regard to Cobalt, Tario stated:

Cobalt was a solid N+1 facility for a client not needing the sexy factor of SwitchNAP.

48.      Indeed, on or about April 17, 2014, Cobalt representative David Mayne, specifically denied being a direct competitor with Switch. In inviting Switch customer, Michael Walsh of the Las Vegas Global Economic Alliance, to tour Cobalt, Mayne said that comparing Switch and Cobalt is "like comparing the ocean to a lake. Sure both have water, but they are very different ecosystems and attract different clients.  Do we compete? Actually, it is rare, but on occasion. We are not built for the Disney's and Ebay's."

49.      In sum, Switch's offerings are in an entirely different class; undeniably superior to what Cobalt offered to customers.

**The Long and Contentious History Between Cobalt and Switch**

50.      In late 2003, Michael Ballard (who would later become the founder of Cobalt Data Centers) was hired to perform marketing services for Switch.

51.      Ballard worked for Switch serving in various capacities for approximately two years, including acting CFO, until he was terminated for cause in or around April of 2006.  In early 2008, Ballard hired Switch's former contractors and engineers to open a competing data center across the street from Switch in Las Vegas.  Switch then learned that Ballard had illegally retained hard drives and copied confidential proprietary information he obtained prior to his termination, including construction plans, trade secrets, designs, and customer lists.

52.      Cobalt then hired referral agents and vendors to attempt to obtain more of Switch's confidential information including current prices.  Ballard falsely referred to himself as a "founder" of Switch to raise funds and promote Cobalt.  Ballard also sent the current financial

1   backer of Cobalt, John Ritter, to attempt to gather data about Switch from Switch's board

2   members under false pretenses.

3          53.     Switch sued Cobalt in February of 2011.  During the course of discovery, it was

4   revealed that Cobalt had conspired to systematically misappropriate Switch's intellectual property

5   through corporate espionage and various falsehoods.  It became clear that Cobalt had been

6   engaged in open and brazen attempts to steal Switch's intellectual property, including patent

7   pending trade secrets and designs.

8          54.     In addition to litigation, Switch took additional measures to defend itself against

9   Cobalt's efforts to use potential customers, vendors, and brokers to obtain more of Switch's

10  confidential and patent pending information.  For example, Switch included defensive language

11  in its Acceptable Use Policy ("AUP") which governs activity of those entering, using, or serving

12  Switch's data centers to protect itself rom Cobalt.  Specifically, Switch's AUP prohibited those

13  exposed to or benefiting Switch's data center technologies from doing business with Switch *and*

14  Cobalt, to prevent future abuse, misappropriation, espionage, or unlawful competition, given the

15  ongoing lawsuit.

16         55.     After years of discovery, motions to compel Cobalt to produce the Switch

17  materials Ballard took prior to his termination, and extensive confidential settlement negotiations,

18  Michael Ballard, John Ritter, Cobalt, and V5 Technologies all settled with Switch.  The

19  signatories also publicly acknowledged Switch's suit was legitimate.  Switch agreed to a nominal

20  settlement which was donated to a charity, in exchange for Ballard and Cobalt publicly confessing

21  their unlawful acts.

22         56.     Accordingly, in 2013, Cobalt, Ballard, and V5 Technologies publicly

23  acknowledged the validity of Switch's lawsuit and admitted in the public settlement agreement

24  that Ballard had breached his agreements with Switch, misrepresented his role as a Switch

25  "founder", and retained Switch's intellectual property and confidential information all to

26  unlawfully compete with Switch.

27

28

57.     Cobalt also released all alleged claims raised against Switch during the course of the suit, including past, present, and future claims of anti-trust or monopoly.

58.     In the years following the initial misappropriation, Switch has acted to prevent Cobalt and its principals from using deceitful tactics to obtain confidential and proprietary information from Switch.  That includes ensuring Switch only uses vendors who do not work with Cobalt and will work exclusively with Switch.  Switch has every right to engage those vendors it prefers and who will operate in an acceptable manner.

**The Suspicious and Harmful Timing of Cobalt's Lawsuit**

59.     Switch made its initial public offering ("IPO") on the New York Stock Exchange in November of 2017.  Immediately prior to this IPO, on September 7, 2017, Cobalt filed a lawsuit against Switch making the very claims that Cobalt had released as part of the prior settlement agreement.

60.     Cobalt also referred to information that it had agreed not to disclose as part of the confidentiality agreements.

61.     Finally, Cobalt made several references to a "Las Vegas market" in which Switch and Cobalt were competing as colocation data centers.

62.     Upon information and belief, Cobalt's purpose in bringing the lawsuit at the time it did was to leverage Switch's upcoming IPO in order to secure a nuisance settlement.

63.     Upon information and belief, Cobalt also brought this lawsuit for the following improper and ulterior purposes:

    a.  To gain access to trade secrets, confidential business strategy, and other valuable assets and property of Switch that Cobalt (or its owners) hopes to use to harm Switch in future endeavors.

    b.  To cause discord between Switch and its many vendors and customers at the critical time of Switch going public.

    c.  To use the litigation privilege to shield libelous, defamatory, and disparaging statements.

d.  To negatively affect Switch's stock price.

e.  To attempt to escape the terms of the Settlement Agreement signed by Cobalt.

f.  To burden Switch with incredibly expensive and burdensome discovery that has little to do with the merits of the litigation; knowing that given Cobalt's and Ritter's ongoing bankruptcies, Switch has little chance of recouping its costs even if it prevails on all claims.

64.     On information and belief, John Ritter prepared and encouraged Cobalt's failure and the resulting litigation against Switch as a means to satisfy his own personal creditors in his own personal bankruptcy, with the hope and representation that Switch would settle quickly, giving him funds that he could transfer to his many creditors.

## FIRST CLAIM FOR RELIEF
### Breach of Settlement Agreement

65.     Switch repeats and realleges each and every allegation contained in paragraphs 1 through this number of the counterclaim with the same force and effect as if set forth herein.

66.     The parties entered into a valid contract on March 8, 2013 in which Cobalt agreed to release "any and all claims, causes of action, disputes and damages, including, but not limited to claims of abuse of process, unfair competition, antitrust, defamation, or tortious interference against Switch, in exchange for Switch settling and release its claims against David Michael Ballard in Case No.: 2:11-cv-00285-JCM-GWF."

67.     Cobalt breached this agreement by suing Switch in this case for claims that Cobalt agreed to waive and release.

68.     Cobalt's intent to circumvent the terms of the Settlement Agreement is further demonstrated by Cobalt's efforts to seek discovery during the years that preceded the Settlement Agreement.

69.     Cobalt's actions have no excuse or justification that would render them allowable under the terms of the Settlement Agreement.

70.     Switch has complied with all of its obligations under the Settlement Agreement.

71.     As a result of Cobalt's conduct, Switch has suffered substantial injuries to its business and property in an amount to be proven at trial.  These injuries were a foreseeable consequence of Cobalt's breach of contract.

## SECOND CLAIM FOR RELIEF
### Abuse of Process

72.     Switch repeats and realleges each and every allegation contained in paragraphs 1 through this number of the counterclaim with the same force and effect as if set forth herein.

73.     In bringing its lawsuit against Switch, Cobalt acted with an ulterior purpose other than resolving a dispute.

74.     Namely, on information and belief, Cobalt acted in an attempt to secure a nuisance settlement from Switch by bringing its lawsuit just as Switch undertook its IPO, at just the point when such a lawsuit would do the most damage.

75.     Upon information and belief, Cobalt also brought this lawsuit for the following improper and ulterior purposes:

a.     To gain access to trade secrets, confidential business strategy, and other valuable assets and property of Switch that Cobalt (or its owners) hopes to use to harm Switch in future endeavors.

b.     To cause discord between Switch and its many vendors and customers.

c.     To use the litigation privilege to shield libelous, defamatory, and disparaging statements.

d.     To escape the terms of the Settlement Agreement that Cobalt agreed to.

e.     To punish Switch with incredibly expensive and burdensome discovery that has little to do with the merits of the litigation. And given Cobalt's bankruptcy, Switch has little chance of recouping its costs even if it prevails on all claims.

f.     To satiate John Ritter's creditors in his personal bankruptcy with false claims that they would be the recipients of a quick nuisance settlement with Switch.

76.     Cobalt undertook these actions willfully.

77.     As a result of Cobalt's conduct, Switch has suffered substantial injuries to its business and property in an amount to be proven at trial.   These injuries were a foreseeable consequence of Cobalt's actions.

### THIRD CLAIM FOR RELIEF
**Intentional Interference with Prospective Economic Advantage**

78.     Switch repeats and realleges each and every allegation contained in paragraphs 1 through this number of the counterclaim with the same force and effect as if set forth herein.

79.     As a result of Switch's then-upcoming IPO, a prospective contractual relationship existed between Switch and any number of potential investors in Switch.

80.     Cobalt, due to its position in the market, was aware of these potential contractual relationships.

81.     On information and belief, Cobalt intended to harm Switch by bringing its lawsuit. Cobalt intended to secure a nuisance settlement from Switch, hoping that Switch would want to minimize additional damage that would result from an ongoing lawsuit.

82.     Cobalt had no privilege or justification for its interference with Switch's potential economic advantage.

83.     As a result of Cobalt's conduct, Switch has suffered substantial injuries to its business and property in an amount to be proven at trial.   These injuries were a foreseeable consequence of Cobalt's interference.

### FOURTH CLAIM FOR RELIEF
**Declaratory Relief**

84.     Switch repeats and realleges each and every allegation contained in paragraphs 1 through this number of the counterclaim with the same force and effect as if set forth herein.

85.     A controversy exists between Switch and Cobalt that is ripe for adjudication regarding the scope of the relevant market in which the parties compete.

86.     Cobalt argues that a "Las Vegas market" exists for colocation data centers that is limited to the Las Vegas Metropolitan area.

87.     Switch argues that the very nature of the services provided by colocation data centers, namely the *remote* storage of and access to data files, evidences (demands even) a worldwide or nationwide market.

88.     Switch competed with Cobalt and other colocation data centers throughout the United States and worldwide for customers and market share.

89.     Switch currently competes with companies throughout the world, and is not limited in its ability to service clients or compete with other colocation data centers to the Las Vegas Metropolitan area.

90.     During its existence, Cobalt competed with companies throughout the world, and was not limited in its ability to service clients or compete with other colocation data centers to the Las Vegas Metropolitan area.

91.     Pursuant to 28 U.S.C, § 2201, Switch is entitled to declaratory judgment concerning the correct scope of the market at issue.

## **PRAYER FOR RELIEF**

1.     That the Court enter judgment and compensatory damages in favor of Counterclaimant;

2.     That the Court award Counterclaimant punitive damages;

3.     That the Court declare that the relevant market for colocation data centers similar to Switch is not limited to the Las Vegas Metropolitan Area but extends worldwide.

4.     That the Court award Counterclaimant its costs and attorney fees incurred in connection with this action; and

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

5.      For such other and further relief as the Court deems just and proper.

DATED this 12th day of October, 2018.

                                        HUTCHISON & STEFFEN, LLC

                                        /s/ Jeffrey R. Hall
                                        _____
                                        Mark Hutchison (4639)
                                        Jeffrey R. Hall (9572)
                                        Chad Harrison (13888)
                                        Peccole Professional Park
                                        10080 West Alta Drive, Suite 200
                                        Las Vegas, Nevada 89145
                                        Phone (702) 385-2500
                                        Fax (702) 385-2086
                                        mhutchison@hutchlegal.com
                                        jhall@hutchlegal.com
                                        charrison@hutchlegal.com

                                        *Attorneys for Defendants/Counterclaimants*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE

Pursuant to FED. R. CIV. P. 5(b), I certify that I am an employee of Hutchison & Steffen, PLLC and that on this 12th day of October, 2018 I caused the above and foregoing document entitled **SWITCH, LTD'S ANSWER TO PLAINTIFF'S COMPLAINT, AND COUNTERCLAIM AGAINST V5 TECHNOLOGIES, LLC** to be served as follows by personally transmitting a copy of same via the Court's CM/ECF Internet system to their respective registered email site.

*/s/Danielle Kelley*
An employee of
HUTCHISON & STEFFEN, PLLC