1   I. Scott Bogatz
    Nevada Bar No. 3367
2   Kerry E. Kleiman
    Nevada Bar No. 14071
3   REID RUBINSTEIN & BOGATZ
    Bank of America Plaza
4   300 South 4th Street, Suite 830
    Las Vegas, NV 89101
5   Telephone: (702) 776-7000
    Facsimile:  (702) 776-7900
6   sbogatz@rrblf.com
    kkleiman@rrblf.com
7
    Bryan A. Merryman (*Pro Hac Vice*)
8   Catherine Simonsen (*Pro Hac Vice*)
    WHITE & CASE LLP
9   555 S. Flower Street, Suite 2700
    Los Angeles, CA  90071-2433
10  Telephone: (213) 620-7700
    Facsimile:  (213) 452-2329
11  bmerryman@whitecase.com
    catherine.simonsen@whitecase.com
12
    Claire DeLelle (*Pro Hac Vice*)
13  Celia McLaughlin (*Pro Hac Vice*)
    WHITE & CASE LLP
14  701 Thirteenth Street, NW
    Washington, DC 20005-3807
15  Telephone: (202) 626-3600
    Facsimile:  (202) 639-9355
16  claire.delelle@whitecase.com
    cmclaughlin@whitecase.com
17
    *Attorneys for Plaintiff*
18  *V5 Technologies, LLC, d/b/a Cobalt Data Centers*

19              **UNITED STATES DISTRICT COURT**

20                    **DISTRICT OF NEVADA**

21  V5 TECHNOLOGIES, LLC, d/b/a            Case No. 2:17-cv-02349-KJD-NJK
    COBALT DATA CENTERS,
22                                         **PLAINTIFF V5 TECHNOLOGIES, LLC'S:**
                Plaintiff,
23                                         **(1) OPPOSITION TO SWITCH'S
         v.                                    MOTION TO COMPEL FURTHER
24                                             DEPOSITION TESTIMONY AND
    SWITCH, LTD., et al.,                      PRODUCTION OF DOCUMENTS
25                                             RELATING TO FEES AND COSTS;**
                Defendants.
26                                         **(2) DECLARATIONS OF CATHERINE S.
                                               SIMONSEN AND THOMAS J.
27                                             DEVORE**

28                                             [*Declarations Filed Separately*]

1

**TABLE OF CONTENTS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.     **INTRODUCTION** ................................................................................. **1**

II.    **BACKGROUND** .................................................................................. **2**

III.   **THE COURT SHOULD DENY THE MOTION** ................................. **5**

     A.     Switch's Motion Is Untimely ....................................................... 5

     B.     The Information Switch Seeks Is Not Relevant and Therefore Not Discoverable............................................................................... 8

     C.     Switch Seeks Information Protected from Disclosure by the Attorney-Client Privilege and Work Product Doctrine............................ 15

     D.     Switch Should Pay Cobalt's Legal Fees Incurred in Opposing the Motion ...................................................................................... 21

IV.   **CONCLUSION**................................................................................. **21**

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A.P.I., Inc. v. Atl. Mut. Ins. Co.*,
   2010 U.S. Dist. LEXIS 154562 (D. Minn. May 3, 2010) ...........................................................9

*Action Ink, Inc. v. Anheuser-Busch, Inc.*,
   2012 U.S. Dist. LEXIS 180250 (E.D. La. Dec. 20, 2012) ........................................................12

*Barger v. First Data Corp.*,
   2019 U.S. Dist. LEXIS 1825 (E.D.N.Y. Jan. 4, 2019) .............................................................12

*Benitez v. Lopez*,
   2019 U.S. Dist. LEXIS 64532 (E.D.N.Y. Mar. 14, 2019) ...................................................14, 15

*Berger v. Seyfarth Shaw LLP*,
   2008 U.S. Dist. LEXIS 88811 (N.D. Cal. Oct. 21, 2008) ........................................................19

*Berry v. Hawaiian Express Serv.*,
   2006 U.S. Dist. LEXIS 78281 (D. Haw. Oct. 25, 2006) ............................................................8

*Best Buy Co. v. AU Optronics Corp. (In re TFT-Lcd Flat Panel Antitrust Litig.)*,
   2014 U.S. Dist. LEXIS 32207 (N.D. Cal. Feb. 3, 2014) ...........................................................10

*Bushnell, Inc. v. Brunton Co.*,
   659 F. Supp. 2d 1150 (D. Kan. 2009) ......................................................................................14

*Chalmers v. City of Los Angeles*,
   796 F.2d 1205 (9th Cir.1986) ...................................................................................................10

*Cobra Int'l, Inc. v. BCNY Int'l, Inc.*,
   2013 U.S. Dist. LEXIS 190268 (S.D. Fla. Nov. 4, 2013) ........................................................14

*CSX Transp., Inc. v. Peirce*,
   2012 U.S. Dist. LEXIS 154788 (N.D.W. Va. Oct. 29, 2012) .....................................................8

*Devon IT, Inc. v. IBM Corp.*,
   2012 U.S. Dist. LEXIS 166749 (E.D. Pa. Sept. 27, 2012) .......................................................19

*Devries v. Morgan Stanley & Co.*,
   2015 U.S. Dist. LEXIS 27293 (S.D. Fla. Mar. 2, 2015) ............................................................9

*Dinkins v. Schinzel*,
   2018 U.S. Dist. LEXIS 44313 (D. Nev. Mar. 19, 2018) ............................................................8

*Eruchalu v. U.S. Bank N.A.*,
   2014 U.S. Dist. LEXIS 127974 (D. Nev. Sep. 12, 2014) ...........................................................8

*ESCO Corp. v. Bradken Res. Pty Ltd.*,
   2011 U.S. Dist. LEXIS 46460 (D. Or. Jan. 31, 2011) ...................................................8

*Gbarabe v. Chevron Corp.*,
   2016 U.S. Dist. LEXIS 103594 (N.D. Cal. Aug. 5, 2016)......................................15

*Gerawan Farming v. Rehrig Pac. Co.*,
   2013 U.S. Dist. LEXIS 39121 (E.D. Cal. Mar. 19, 2013) .........................................6

*Haghayeghi v. Guess*,
   2015 U.S. Dist. LEXIS 180844 (W.D. Wash. May 11, 2015).................................11

*Hologram USA, Inc. v. Pulse Evolution Corp.*,
   2016 WL 3353935 (D. Nev. June 10, 2016)...........................................................20

*In re Int'l Oil Trading Co.*,
   548 B.R. 825 (Bankr. S.D. Fla. 2016).............................................................. passim

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
   2015 U.S. Dist. LEXIS 135031 (S.D.N.Y. Sep. 10, 2015).....................................15

*Kintera, Inc. v. Convio, Inc.*,
   219 F.R.D. 503 (S.D. Cal. 2003)............................................................................16

*Lambeth Magnetic Structures, LLC v. Seagate Tech. (US) Holdings, Inc.*,
   2017 U.S. Dist. LEXIS 215773 (W.D. Pa. Dec. 19, 2017).....................................16

*Masimo Corp. v. Tyco Health Care Grp., L.P.*,
   2007 U.S. Dist. LEXIS 101987 (C.D. Cal. Nov. 5, 2007).......................................10

*Mendenhall v. Nat'l Transp. Safety Bd.*,
   213 F.3d 464 (9th Cir. 2000)..................................................................................10

*Miller UK Ltd. v. Caterpillar, Inc.*,
   17 F. Supp. 3d 711 (N.D. Ill. 2014) .......................................................................15

*Mitchell v. Potter*,
   2007 U.S. Dist. LEXIS 8567 (W.D. Ark. Feb. 5, 2007).........................................6

*MLC Intellectual Prop., LLC v. Micron Tech., Inc.*,
   2019 U.S. Dist. LEXIS 2745 (N.D. Cal. Jan. 7, 2019) ..........................................11

*Mondis Tech., Ltd. v. LG Elecs., Inc.*,
   2011 U.S. Dist. LEXIS 47807 (E.D. Tex. May 4, 2011) .........................................19

*Morley v. Square, Inc.*,
   2015 U.S. Dist. LEXIS 155569 (E.D. Mo. Nov. 18, 2015) .....................................19

*Odyssey Wireless, Inc. v. Samsung Elecs. Co.*,
   2016 U.S. Dist. LEXIS 188611 (S.D. Cal. Sept. 20, 2016)...............................16, 18

*Robinson v. Duncan*,
    255 F.R.D. 300 (D.D.C. 2009) ...................................................................................9

*Scentsy, Inc. v. B.R. Chase, L.L.C.*,
    2012 U.S. Dist. LEXIS 143633 (D. Idaho Oct. 2, 2012) ....................................13, 21

*Schwarz v. Sect'y of Health & Human Servs.*,
    73 F.3d 895 (9th Cir. 1995) ......................................................................................10

*Securitypoint Holdings, Inc. v. United States*,
    2019 U.S. Claims LEXIS 341 (Fed. Cl. Apr. 16, 2019) ..........................................17

*Smith v. Aetna Life Ins. Co.*,
    2019 U.S. Dist. LEXIS 49620 (S.D. Cal. Mar. 25, 2019) ........................................10

*Smith v. Navient Sols., LLC*,
    2018 U.S. Dist. LEXIS 191183 (W.D. Pa. Nov. 8, 2018) ........................................12

*United States v. $186,416.00 in United States Currency*,
    642 F.3d 753 (9th Cir. 2011) ......................................................................................9

*In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*,
    2019 U.S. Dist. LEXIS 160051 (D.N.J. Sep. 18, 2019) ...........................11, 14, 15, 17

*VHT, Inc. v. Zillow Grp., Inc.*,
    2016 U.S. Dist. LEXIS 172373 (W.D. Wash. Sep. 8, 2016) ....................................11

*Viamedia, Inc. v. Comcast Corp.*,
    2017 U.S. Dist. LEXIS 101852 (N.D. Ill. June 30, 2017) ........................................19

*Welch v. Metropolitan Life Ins.*,
    480 F.3d 942 (9th Cir. 2007) ....................................................................................10

*York Group v. Pontone*,
    2012 U.S. Dist. LEXIS 193838, at *40 (W.D. Pa August 6, 2012) ...........................9

*Yousefi v. Delta Electric Motors, Inc.*,
    2015 U.S. Dist. LEXIS 180844, at *6 (W.D. Wash. May 11, 2015) ........................11

## FEDERAL STATUTES

11 U.S.C. § 303(b) ..............................................................................................................14

15 U.S.C. § 15 ......................................................................................................................8

## FEDERAL RULES

Fed. R. Civ. P. 26(b) ...................................................................................................passim

Fed. R. Civ. P. 30 ...........................................................................................................13, 21

Fed. R. Civ. P. 30(b)(6)........................................................................................1, 3, 4, 7

Fed. R. Civ. P. 30(d)(3)............................................................................................12, 13

Fed. R. Civ. P. 37(a)(5)..................................................................................................21

Fed. R. Civ. P. 54............................................................................................................9

Fed. R. Civ. P. 54(d)........................................................................................................9

## STATE STATUTES

Nev. Rev. Stat. 598A.210(1), (2)......................................................................................8

1        Plaintiff V5 Technologies, LLC d/b/a Cobalt Data Centers ("Cobalt") hereby files this

2  opposition to Defendant Switch, Ltd.'s ("Switch") Motion to Compel Further Deposition

3  Testimony and Production of Documents Relating to Fees and Costs (ECF No. 126) (the

4  "Motion").

5  **I.     INTRODUCTION**

6        Rule 26(b) of the Federal Rules of Civil Procedure is clear:  "Parties may obtain discovery

7  regarding any ***nonprivileged*** matter that is ***relevant*** to any party's claim or defense and

8  proportional to the needs of the case."  Fed. R. Civ. P. 26(b) (emphases added).  In the Motion,

9  Switch improperly seeks to compel Cobalt to provide information that is completely irrelevant to

10  the claims and defenses in this case; privileged or protected under the work product doctrine; or

11  both.  Switch's own cited authority confirms this.  The Court should deny the Motion and award

12  Cobalt its fees and costs incurred in opposing Switch's limitless quest to indulge its idle

13  curiosities and fanciful suspicions at Cobalt's expense.

14        As an initial matter, the Motion is untimely and should be denied on that basis.  Switch

15  first expressed an interest in learning the terms of Cobalt's fee arrangement with its attorneys

16  ***eight months ago***, in February 2019.  Rather than serve the document requests at issue in the

17  Motion at that time (or in March 2018, when Switch served the majority of its document

18  requests), Switch waited until ***August 2019***—nearly two years into this litigation and less than

19  two months prior to the fact discovery cutoff—to serve its first document requests on the subject.

20  And even though Cobalt objected almost ***four months ago***, in June 2019, to the topic in Switch's

21  Rule 30(b)(6) deposition notice, "[w]ho is paying the attorney fees and costs for this lawsuit," and

22  even though the deposition objections with which Switch takes issue occurred almost ***three***

23  ***months ago***, in July 2019, Switch waited months—until two days before the fact discovery

24  cutoff—to file its Motion.  If Switch truly wanted to learn "[t]he identity of the parties to any

25  agreement regarding the funding of this litigation" in order to pursue "further discoverable

26  information" (Mot. at 10:14-16), Switch should have brought this Motion with sufficient time for

27  the Court to rule and Switch to pursue any additional discovery to which it is entitled (though, to

28  be clear, Switch is entitled to none).

1    Switch's Motion fails on the merits, too.  Courts have repeatedly and consistently held

2    that retainer agreements and other information related to an adversary's funding of its attorney

3    fees are not discoverable where, as here, such information is not an element of any party's claim

4    or defense but rather a statutory entitlement contingent upon Cobalt prevailing on its claims.  This

5    is not a class action where the ability of the representative parties to fairly and adequately protect

6    the interests of the class—and thus their financial incentives vis-à-vis the lawsuit—are at issue.

7    This is ordinary, bilateral litigation between former competitors.  Whether and how Cobalt's

8    attorneys are being paid is irrelevant.

9    Indeed, by Switch's logic, retainer agreements and the source of fee payments would be

10   discoverable as a matter of course in every lawsuit in which "[i]ncluded in the complaint are

11   claims that [the plaintiff] is entitled to attorney's fees" (Mot. at 2:3-4).  Of course, that is not the

12   law.  Under these circumstances, courts wisely defer any fee discovery until the fee entitlement

13   contingency is satisfied.  Moreover, depending on how the Court may ultimately approach a

14   "reasonable fee" award, Cobalt's fee arrangement with its attorneys may **never** become relevant

15   under clear Ninth Circuit precedent.

16   On top of being irrelevant, the information Switch seeks is largely privileged or protected

17   by the work product doctrine.  Indeed, Switch's own cited authority makes clear that

18   communications and agreements with the funder of a litigation are protected from disclosure

19   under the work product doctrine if not also the attorney-client privilege.  In other words, even if

20   an individual or entity other than Cobalt were funding the prosecution of this lawsuit, and even if

21   Switch were entitled to discover their identity(ies), there is no further discovery Switch could

22   pursue with that information.  Of course, this fact only reinforces the utter irrelevance of Switch's

23   inquiry.

24   For these and the reasons that follow, the Court should deny the Motion.

25   **II.    BACKGROUND**

26   Discovery has been ongoing for nearly two years.  Initially set to conclude on November

27   1, 2018, the Court extended the deadline to complete fact discovery to September 27, 2019.  *See*

28   ECF No. 79 at 3; ECF No. 81.  In extending the deadline, the Court cautioned that it "will not

- 2 -

1  grant any further extensions absent extraordinary circumstances." ECF No. 81.

2       Shortly thereafter, Switch became curious about how Cobalt—which went out of business

3  in 2015 as a result of Switch's anticompetitive and tortious scheme—was paying its attorneys.

4  Switch's counsel first raised their desire to obtain information about Cobalt's fee arrangement on

5  *February 9*, 2019. Simonsen Decl., ¶ 2 & Ex. 1. Cobalt's counsel declined to provide any

6  information on the grounds that the terms by which Cobalt retained its attorneys was not a proper

7  subject of discovery. *Id.*, ¶ 3. Cobalt's counsel asked Switch's counsel to explain why the

8  information Switch sought was relevant. Switch's counsel stated that Switch "wants to know"

9  whether John Ritter—one of Cobalt's board members—or "one of Switch's competitors" is

10  funding the lawsuit. *Id.*

11       Approximately *three months later*, Switch began the process of attempting formally to

12  obtain the information. In its May 2019 Rule 30(b)(6) deposition notice to Cobalt, Switch noticed

13  the topic of "[w]ho is paying the attorney fees and costs for this lawsuit[.]" *Id.*, Ex. 2. Cobalt

14  served written objections to producing a corporate designee on this topic, on the grounds of

15  attorney-client privilege, attorney work product protection, and relevance. *See id.*, Ex. 3. Switch

16  did not move to compel Cobalt to produce a corporate representative on the topic after receiving

17  Cobalt's objections on June 21, 2019. *Id.*, ¶ 6.

18       Despite Cobalt's objections, at depositions from July 17 through August 16, 2019, Switch

19  attempted to elicit testimony about the terms by which Cobalt retained its attorneys, as well as

20  Cobalt's cost of litigation to date. Cobalt's counsel again objected on the grounds of relevance,

21  privilege, and attorney work product protection, and instructed the deponents not to answer. *See*

22  Mot. at 2:23-8:14.

23       In a discussion during a break at the deposition of Jeff Brown on July 18, 2019, counsel

24  for Cobalt again asked counsel for Switch to explain the relevance of the requested information.

25  Counsel for Switch responded that Cobalt had somehow put the information at issue by

26  requesting in its complaint the attorney fees and costs to which it is statutorily entitled if it

27  prevails, and that Switch wants to know whether a competitor has an interest in the lawsuit.

28  Cobalt's counsel responded that Switch was welcome to ask any witness whether he or she—or a

- 3 -

competitor of Switch—had a financial interest in the lawsuit or was paying fees, and represented to Switch's counsel that no competitor of Switch is paying Cobalt's fees. *See* Simonsen Decl., ¶ 7.

Indeed, Switch had the full opportunity to—and did—ask many such questions of numerous Cobalt witnesses. For example, during the deposition of one of Cobalt's Rule 30(b)(6) designees, Jeff Brown, Cobalt's President and CEO, confirmed that Switch's primary competitor in the Las Vegas market, ViaWest, does not have an interest or investment in this lawsuit:

> Q. Has ViaWest agreed to pay for anything related to this lawsuit?
>
> A. Not to my knowledge.
>
> Q. Do the owners of Cobalt today have any financial connection with ViaWest?
>
> A. Not to my knowledge.

*Id.*, Ex. 4 (Jeff Brown R. 30(b)(6) Depo. Tr., July 17, 2019) at 7:19-25; *see also, e.g., id.*, Ex. 5 (John Ritter Depo. Tr., July 19, 2019) at 209:7-25 (John Ritter answering the question, "Do you have any financial interest in this law -- the outcome of this lawsuit?"); Mot., Ex. 4 (Jeff Brown Depo. Tr., July 18, 2019) at 64:13-16 (Jeff Brown answering the question, "Do you have any financial stake in the outcome of this case?").

On August 6, 2019—approximately six months after Switch first raised the issue of its curiosity as to whether and how Cobalt is paying its attorneys—Switch served its sixth set of requests for production ("RFP"):

> 176:  "Please produce the retainer agreement between White & Case and Plaintiff."
>
> 177:  "Please produce the retainer agreement between Reid Rubenstein & Bogatz and Plaintiff."
>
> 178:  "Please produce any Documents . . . Identifying [who is] paying White & Case's bills or invoices for legal services or costs resulting from this litigation.
>
> 179:  "Please produce any Documents . . . Identifying [who is] paying Reid Rubenstein & Bogatz's bills or invoices for legal services or costs resulting from this litigation."

Mot., Ex. 7 at 5. Cobalt again objected on the grounds of, *inter alia*, privilege, attorney work

product, and relevance. *Id.*, Ex. 8 at 2-4.

In its August 26, 2019, seventh set of RFPs, Switch revealed the ultimate purpose of its inquiries regarding the terms by which Cobalt retained its attorneys:

> 180:   "Please produce all documents and ESI used in or related to any presentations or briefings about this case made by [Cobalt's] agents, representatives, or counsel (including but not limited to Reid Rubenstein & Bogatz and/or White & Case) to investors or potential investors funding this case for the period from January 2011 through present."

Simonsen Decl., Ex. 6, at 2:12-17. Though not a subject of the Motion, Cobalt has objected to RFP No. 180 on the grounds of relevance, attorney work product, and attorney-client privilege. *Id.* at 2:18-26.

Switch provided Cobalt's counsel with a draft of the Motion on September 20, 2019. The parties met and conferred again on September 24, 2019. Cobalt's counsel again asked Switch's counsel to explain the relevance of the requested information. Switch's counsel stated, "Our client wants this information" and made reference to the information allegedly being relevant to "bias." Cobalt's counsel again offered to provide a verified statement from Cobalt representing that no competitor of Switch is funding the lawsuit. That should have ended this matter, but Switch's counsel declined the offer, explaining that his client was "curious" who might be funding the lawsuit. Simonsen Decl., ¶ 11. The Motion followed.

## III.   THE COURT SHOULD DENY THE MOTION

### A.   Switch's Motion Is Untimely

It has been nearly eight months since Cobalt informed Switch that inquiry into the terms of its attorneys' engagements was off-limits. Nonetheless, Switch waited months to pursue discovery on the topic and filed its Motion on the eve of the close of fact discovery. The Court should deny the Motion as untimely.

The Court looks to a non-exhaustive list of factors in determining whether a motion to compel is timely. These are:

> (1) the length of time since expiration of the discovery deadline; (2) the length of time the moving party has known about the discovery; (3) whether the discovery deadline has been extended; (4) the explanation for the tardiness or delay; (5) whether dispositive motions have been scheduled or filed; (6) the age of the

- 5 -

case; (7) any prejudice to the party from whom late discovery is sought; and (8) disruption of the Court's schedule.

ECF No. 116 at 4:24-5:2.  As applied to the Motion, these factors warrant a finding of untimeliness.

Switch waited until September 25, 2019—**two days** before the close of fact discovery, and over **two years** into this litigation—to file its Motion.  As a result, any production that Switch obtains by the Motion will necessarily occur after the fact discovery cutoff deadline of September 27, 2019.  While these circumstances may be unavoidable in some instances, such as where the non-moving party causes the delay, such is not the case here.  In February 2019, Cobalt declined to provide Switch with the information at issue in the Motion.  Switch chose to wait more than seven months to bring the issue before the Court.

Switch's decision to wait until the end of fact discovery and over two years into this litigation to bring the Motion is particularly egregious where Switch asserts that one of its purposes is to "discov[er] whether there is further discoverable information available to Defendant."  Mot. at 10:14-16.  Even if Switch were correct that "an entity or person that is funding the litigation would more than likely have discoverable information about the case," *id.* at 10:21-22, it was incumbent upon Switch to seek disclosure of any funding source long before the discovery cutoff so that the parties could litigate their dispute on a schedule that would permit Switch to conduct third-party discovery, if authorized, within the framework of the existing scheduling order.  *See Gerawan Farming v. Rehrig Pac. Co*., 2013 U.S. Dist. LEXIS 39121, at *14-15 (E.D. Cal. Mar. 19, 2013) ("[D]iscovery disputes are a common component of any civil matter and they should be anticipated.") (quotations and modifications omitted).  The Court already extended the discovery cutoff once—by nearly one year—and stated that it would not again extend discovery "absent extraordinary circumstances."  ECF 81.  Switch's inactivity on the issue for over seven months is not the sort of "extraordinary circumstance" that would warrant an extension.  *See, e.g.*, *Mitchell v. Potter*, 2007 U.S. Dist. LEXIS 8567, at *3 (W.D. Ark. Feb. 5, 2007) (finding litigant's own delay was not "extraordinary circumstance" warranting extension of discovery deadline).

In the Motion, Switch offers no justification for its delay.  Switch ignores the fact that it

knew last February that Cobalt would not provide the information Switch seeks.  Switch avoids

mentioning the date—June 21, 2019—of Cobalt's response to Switch's Rule 30(b)(6) deposition

notice wherein Cobalt objected to providing a deponent on the topic of "[w]ho is paying the

attorney fees and costs for this lawsuit."  *See* Simonsen Decl., Ex. 3 at 42.  Indeed, counsel's on-

the-record colloquies at depositions confirm the parties reached an impasse on this issue months

ago.  For example, on July 17, 2019, at the Rule 30(b)(6) deposition of Jeff Brown, counsel for

Switch asked, "Are you aware of who is paying the attorney fees and costs for this lawsuit?"

Counsel for Cobalt clarified, "[W]e objected to that question and said we were not providing a

designee on that topic.  And we maintain that objection."  Counsel for Switch replied, "All right.

You've instructed the witness not to answer.  ***We'll make our motion***."  *Id.*, Ex. 4 (Jeff Brown R.

30(b)(6) Depo. Tr., July 17, 2019) at 292:16-293:4 (emphasis added).  Switch "ma[d]e [its]

motion" over two months later.

Absent a good faith explanation why Switch failed to file this Motion last February, when

Cobalt first declined to provide the disputed information; or in June, when Cobalt formally

refused to provide the information; or in July, when Switch acknowledged it would need to

"make [its] motion," Switch's decision to hold the Motion until September 25, 2019, can be

viewed only as dilatory.

The remaining factors militate in favor of finding the Motion untimely.  Initial expert

reports are due October 25, 2019; dispositive motions have already been scheduled for January

24, 2020; the case is over two years old; and any requirement to engage in further document

review and production or make witnesses and counsel available for further depositions during the

intensive expert discovery and dispositive motions periods would prejudice Cobalt in its

prosecution of this case and disrupt the Court's schedule.  *See* ECF No. 81.  (To the extent Switch

argues that the information it seeks to discover is not relevant to expert reports or dispositive

motions, that only reinforces the conclusion that the information is irrelevant and not

discoverable.)

The Court should deny the Motion as untimely.

**B.**   **The Information Switch Seeks Is Not Relevant and Therefore Not Discoverable**

As a preliminary matter, Switch misapprehends the burdens applicable to its Motion. Switch states that "'[i]n the context of a motion to compel, the party resisting discovery carries the heavy burden of showing why discovery should be denied.'"  Mot. at 10:7-10 (quoting *Eruchalu v. U.S. Bank N.A.*, 2014 U.S. Dist. LEXIS 127974, at *2 (D. Nev. Sep. 12, 2014)).  That is the case *only* where the *movant* has first met *its* "burden to show the relevancy" of requests like those here that seek information whose "relevancy is not readily apparent." *Dinkins v. Schinzel*, 2018 U.S. Dist. LEXIS 44313, at *2 (D. Nev. Mar. 19, 2018).  Where the movant does not meet that burden, the Court must deny the motion. *See, e.g.*, *id.* at *3 (denying motion to compel responses to requests for admission because "the relevancy of such requests are not readily apparent" and "Plaintiff fail[ed] to articulate how such requests are related to his defamation claim").  Switch fails to satisfy its burden to show how the terms by which Cobalt retained and is paying its attorneys are relevant to the claims and defenses in this action.

<u>Retainer Agreements and Fees Incurred to Date</u>.  RFP Nos. 176 and 177 request Cobalt's retainer agreements with its counsel of record.  Switch similarly sought information in depositions concerning Cobalt's fees incurred to date.  Switch contends this information is relevant because Cobalt requested attorney fees under 15 U.S.C. § 15 and NRS 598A.210(1) and (2)—statutes that Switch characterizes as guaranteeing a reasonable attorney fee award to "plaintiffs *bringing suit* under these sections." Mot. at 2:5-6 (emphasis added).  This is not quite right.

Cobalt's entitlement to fees did not accrue solely by virtue of having sued Switch.  It will accrue only if Cobalt *prevails* on its claims against Switch. *See, e.g.*, *ESCO Corp. v. Bradken Res. Pty Ltd.*, 2011 U.S. Dist. LEXIS 46460, at *28 (D. Or. Jan. 31, 2011) ("[A]ttorney fees are authorized under the statute only to prevailing plaintiffs in antitrust actions."); *Berry v. Hawaiian Express Serv.*, 2006 U.S. Dist. LEXIS 78281, at *24 (D. Haw. Oct. 25, 2006) ("Section 15(a) only provides for an award of attorney's fees to a prevailing plaintiff . . . .").  Put simply, the rates for or aggregate amount of Cobalt's attorney fees are not "relevant to any party's claim or defense" in this action. *See CSX Transp., Inc. v. Peirce*, 2012 U.S. Dist. LEXIS 154788, at *8-

- 8 -

9 (N.D.W. Va. Oct. 29, 2012) (affirming magistrate judge's denial of motion to compel production of fee arrangement documents as irrelevant because "the statutes under which CSX is requesting these fees do not require a party to prove these fees at trial").  Information about Cobalt's actual fees or fee structure cannot affect the Court's analysis of the parties' claims or defenses.  Rather, the right to "a reasonable attorney's fee" arises (automatically) only upon Cobalt proving its claim.

While courts may occasionally find fee arrangements relevant during the pretrial discovery phase in fee shifting cases, the better approach is to defer fee discovery until after the right to attorney fees accrues.  *See, e.g.*, *Devries v. Morgan Stanley & Co.*, 2015 U.S. Dist. LEXIS 27293, at *24-25 (S.D. Fla. Mar. 2, 2015) (denying motion to compel production of engagement letter without prejudice to reassert after any judgment triggering fee award); *Robinson v. Duncan*, 255 F.R.D. 300, 303 (D.D.C. 2009) (same).  Indeed, according to the district court in *York Group v. Pontone*:

> [T]he procedure used by most courts in situations where attorney's fees are requested [is that fee] discovery should be deferred until and if th[e] court makes a determination that [p]laintiffs are entitled to an award of fees at which time the [c]ourt can fashion a procedure for a determination of an appropriate fee award.

2012 U.S. Dist. LEXIS 193838, at *40 (W.D. Pa. Aug. 6, 2012).

This is the approach envisioned by Rule 54(d), which governs requests for fees after judgment.  *See* Fed. R. Civ. P. 54(d)(2); *A.P.I., Inc. v. Atl. Mut. Ins. Co.*, 2010 U.S. Dist. LEXIS 154562, at *6 (D. Minn. May 3, 2010) ("[Plaintiff] need not produce [its attorney retainer agreement reflecting fees] until it makes a formal request for attorney's fees after trial, as envisioned by Federal Rule of Civil Procedure 54(d).").  The advisory committee notes to Rule 54(d) specifically acknowledge the availability of discovery regarding post-judgment fee motions.  Fed. R. Civ. P. 54, advisory committee's note (1993).

Deferring discovery relating to fees until such time as Cobalt's right to fees may arise makes particular sense where any such entitlement would only be to "a reasonable attorney's fee" by statute.  Within the Ninth Circuit, "[t]he lodestar approach is the method customarily used to determine attorney fees under fee-shifting statutes."  *United States v. $186,416.00 in United*

1  *States Currency*, 642 F.3d 753, 755 (9th Cir. 2011).  While they are afforded considerable

2  discretion in their approach, *Best Buy Co. v. AU Optronics Corp.* (*In re TFT-Lcd Flat Panel*

3  *Antitrust Litig.*), 2014 U.S. Dist. LEXIS 32207, at *58 (N.D. Cal. Feb. 3, 2014), district courts

4  within the Ninth Circuit have applied the lodestar method for determining a reasonable fee award

5  in the antitrust context.  *See, e.g.*, *Masimo Corp. v. Tyco Health Care Grp., L.P.*, 2007 U.S. Dist.

6  LEXIS 101987, at *4 (C.D. Cal. Nov. 5, 2007).

7        The Ninth Circuit has repeatedly held that the lodestar method applies without "'reference

8  to the hourly rates actually charged the prevailing party.'"  *Welch v. Metropolitan Life Ins.*, 480

9  F.3d 942, 946 (9th Cir. 2007) (ERISA) (quoting *Mendenhall v. Nat'l Transp. Safety Bd.*, 213 F.3d

10  464, 471 (9th Cir. 2000) (Equal Access to Justice Act)) (quoting *Schwarz v. Sect'y of Health &*

11  *Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995) (Civil Rights Act Title VII)) (quoting *Chalmers*

12  *v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir.1986) (Civil Rights Attorney's Fees Award

13  Act of 1976)).  *But see Masimo Corp.*, 2007 U.S. Dist. LEXIS 101987, at *17-18.  Thus, in the

14  event that the Court were to adopt a lodestar approach to awarding Cobalt fees in this action,

15  Cobalt's retainer agreements with its counsel may be irrelevant and not subject to discovery at all.

16  *See Smith v. Aetna Life Ins. Co.*, 2019 U.S. Dist. LEXIS 49620, at *5 (S.D. Cal. Mar. 25, 2019)

17  (sustaining objection to request for retainer agreement in ERISA fee shifting dispute; "Relying on

18  common sense, this Court finds the retainer agreement to be relevant to the instant controversy.

19  However, under prevailing Ninth Circuit jurisprudence, it is not.").

20        In short, information regarding Cobalt's fee arrangements with its counsel is irrelevant

21  now because Cobalt has yet to prevail, and such arrangements may not become relevant even if

22  Cobalt does prevail.[1]

23  _____

24  [1]    To the extent the Court directs production of Cobalt's attorney fee agreements, Cobalt
requests that it do so subject to Cobalt's right to redact privileged information.  While Switch

25  cites authority to suggest that certain basic information contained in retainer agreements is not
privileged, communicative material in retainer agreements maintains its privileged nature

26  notwithstanding that it is made part of a contract.  *See Haghayeghi v. Guess?, Inc.*, 2016 U.S.
Dist. LEXIS 193963, at *7 (S.D. Cal. Mar. 18, 2016) (observing that information embedded in

27  retainer agreements "that reveals the motive of the client in seeking representation, litigation
strategy, or the specific nature of the service provided fall[s] within the privilege"; ordering

28  production subject to redaction procedure) (quotations omitted).

1      <u>Identity of Any Funder</u>.  Nor is it relevant whether (and if so who) an individual or entity

2  other than Cobalt is paying Cobalt's attorney fees.  As the court stated in *Yousefi v. Delta Electric*

3  *Motors, Inc*., whether Cobalt "is funding this litigation through savings, insurance proceeds, a

4  [K]ickstarter campaign, or contributions from [another source] is not relevant to any claim or

5  defense at issue."  2015 U.S. Dist. LEXIS 180844, at *6 (W.D. Wash. May 11, 2015).  Because

6  the source of litigation funds is generally irrelevant, courts routinely refuse discovery into the

7  topic.  *See In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig*.,

8  2019 U.S. Dist. LEXIS 160051, at *29-31 (D.N.J. Sep. 18, 2019) ("*NDMA*") (collecting cases

9  from within the Second, Seventh, and Ninth Circuits).

10      Only on rare occasions—upon facts not present here—is the source of litigation funds

11  relevant.  Switch tries to invoke a "bias" exception to the usual rule of irrelevance, intimating that

12  "a third-party that is competitive with Switch" might be footing Cobalt's legal bills.  *See* Mot. at

13  10:13-21.  But Switch cannot articulate how, were that true, that fact might support Switch's

14  defense.  Switch has been free to ask, and in some cases has asked, every deponent whether he or

15  she has a financial interest in the outcome of this case.  Switch's baseless speculation does not

16  entitle it to discovery on the topic.  Only "a specific, articulated reason to suspect bias or conflicts

17  of interest" will warrant discovery into the method by which Cobalt is paying its attorneys on bias

18  grounds.  *MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, 2019 U.S. Dist. LEXIS 2745, at *5

19  (N.D. Cal. Jan. 7, 2019); *see also VHT, Inc. v. Zillow Grp., Inc.*, 2016 U.S. Dist. LEXIS 172373,

20  at *5 (W.D. Wash. Sep. 8, 2016) ("In the absence of some indication that any of [defendant's]

21  theories of relevance are more than just theories, the court denies [defendant's] motion to compel

22  [production of litigation funding information]."); *NMDA*, 2019 U.S. Dist. LEXIS 160051, at *31-

23  32 (holding party seeking litigation funding information must present evidence to support claim

24  of relevance and cannot rely on "a parade of horribles").

25      Switch has offered no evidence to demonstrate that a litigation funding source might be

26  biasing Cobalt's witnesses as a competitor of Switch or otherwise.  Despite that lack of evidence,

27  Cobalt has offered sworn testimony that no competitor is funding this litigation to spare this Court

28  Switch's wasteful motion on the topic.  *See* Simonsen Decl., ¶¶ 7, 11; *id.*, Ex. 4 (Jeff Brown R.

- 11 -

30(b)(6) Depo. Tr., July 17, 2019) at 177:19-25 (Cobalt's President and CEO testifying that ViaWest has not "agreed to pay for anything related to this lawsuit" and that "the owners of Cobalt today [do not] have any financial connection with ViaWest"); Declaration of Thomas J. DeVore, ¶ 2 (Manager of Cobalt declaring, "No provider of any services that Switch is in the business of providing is directly or indirectly funding the prosecution of this lawsuit.").  With nothing more than its idle speculation and generalized curiosity to justify the inquiry, Switch is not entitled to know whether Cobalt has a litigation funding source or the identity of such a source.

For these reasons, there is no basis for the Court to compel Cobalt to produce a witness on the topic of "[w]ho is paying the attorney fees and costs for this lawsuit[.]" Mot. at 15:3-10. Parties are not entitled to corporate testimony on irrelevant topics.  *Barger v. First Data Corp.*, 2019 U.S. Dist. LEXIS 1825, at *1 (E.D.N.Y. Jan. 4, 2019) (affirming denial of motion to compel designation of corporate deponent on topics that the magistrate judge deemed irrelevant); *Action Ink, Inc. v. Anheuser-Busch, Inc.*, 2012 U.S. Dist. LEXIS 180250, at *7 (E.D. La. Dec. 20, 2012) (same); *Smith v. Navient Sols., LLC*, 2018 U.S. Dist. LEXIS 191183, at *9 (W.D. Pa. Nov. 8, 2018) (granting motion for protective order on grounds that plaintiff sought corporate designations on irrelevant topics).

Switch contends that "relevance [is] a non-issue" with respect to the portion of its Motion seeking to compel Cobalt to provide further deposition testimony from Messrs. Brown, Devore, and Bogatz, because a relevance objection alone is not sufficient grounds for an instruction not to answer unless the deposed party moves to limit the scope of the deposition under Rule 30(d)(3)(A), and Cobalt "did not suspend the depositions" and so move.  *See* Mot. at 13:28-14:2. This argument ignores the fact that Switch's questions were designed enable Switch to conduct further written discovery that is completely off-limits under the work product doctrine.  *See* Section III.C, *infra*; Mot. at 10:14-16 (admitting Switch seeks to discover "[t]he identity of the parties to any agreement regarding the funding of this litigation" in order to "discover[] whether there is further discoverable information available to Defendant"—presumably, documents concerning any such agreement and communications with any person or entity providing funding

- 12 -

1  for the litigation); Fed. R. Civ. P. 30 advisory committee's note (1993); *Scentsy, Inc. v. B.R.*

2  *Chase, L.L.C.*, 2012 U.S. Dist. LEXIS 143633, at *5 (D. Idaho Oct. 2, 2012) (work product is a

3  proper ground for instructing a witness not to answer).

4        Switch's relevance argument also ignores the implicit agreement counsel for the parties

5  reached during these depositions that the instructions not to answer would be honored unless and

6  until ***Switch*** obtained a ruling from the Court that Switch's unanswered questions sought relevant

7  and discoverable information.  Indeed, at the very first deposition of a Cobalt witness, upon

8  counsel's instruction not to answer, Switch's counsel made no record regarding the purported

9  impropriety of the instruction, and instead merely responded, "All right.  You've instructed the

10  witness not to answer.  ***We'll make our motion***."  Simonsen Decl., Ex. 4 (Jeff Brown R. 30(b)(6)

11  Depo. Tr., July 17, 2019) at 292:16-293:4 (emphasis added).  The next day, when counsel for

12  Switch again pursued the line of questioning and counsel for Cobalt again instructed the witness

13  not to answer, counsel for Switch announced, "We are going to call the judge," but then retreated,

14  stated that "we don't mind taking a motion to Judge [Koppe]," and announced he would "move

15  on."  *See* Mot., Ex. 4 at 65:20-21; 67:11-12; 68:9-10.  Counsel for Switch's words and conduct in

16  response to counsel for Cobalt's instructions not to answer constitute a concession that it was—

17  and remains—Switch's burden to obtain a ruling that Switch's fees and source of payment lines

18  of questioning were within the scope of discoverable information under Rule 26(b), before

19  Cobalt's witnesses should be ordered to provide answers.  Under these circumstances, the Court

20  can and should "order that the deposition[s] be . . . limit[ed] in scope," Fed. R. Civ. P.

21  30(d)(3)(B), to preclude questions designed to seek irrelevant information and to enable Switch to

22  seek further discovery protected from disclosure under the work product doctrine.

23        Similarly irrelevant are the documents Switch seeks in its RFP Nos. 178 and 179 (which

24  seek documents "[i]dentifying the individual or entity paying [Cobalt's attorneys'] bills or

25  invoices for legal services or costs resulting from this litigation").  Switch presents the Court with

26  only two decisions, each from the Southern District of Florida, as purported authority that

27  "[c]ourts from other districts have held that funding agreements are 'relevant.'"  *See* Mot. at

28  12:17-19 (citing *Cobra Int'l, Inc. v. BCNY Int'l, Inc.*, 2013 U.S. Dist. LEXIS 190268 (S.D. Fla.

Nov. 4, 2013); *In re Int'l Oil Trading Co.*, 548 B.R. 825 (Bankr. S.D. Fla. 2016)). Of these, only *Cobra* addressed relevance directly.[2] *Cobra* is inapposite and contrary to reasoned decisions on the subject.

The pertinent document request in *Cobra*, a patent infringement case, is described only as "pertain[ing] to a litigation funding agreement." 2013 U.S. Dist. LEXIS 190268, at *6. While it is unclear how, the movant there asserted that the request implicated both "whether ownership of the patent ha[d] transferred" and "who ha[d] control over the decisions in the . . . case." *Id.* at *8. The court apparently accepted that the litigation funding agreement might implicate ownership (and thus standing to sue on the patent[3]) and therefore determined, without further analysis, that "the litigation funding agreement is relevant." 2013 U.S. Dist. LEXIS 190268, at *9.

Like Switch here, the defendants in *NDMA* relied on *Cobra* to bolster their claim that all of plaintiffs' "agreements and communications with any third-party funders of the litigation" were relevant. 2019 U.S. Dist. LEXIS 160051, at *27, 34. The *NDMA* court called *Cobra* "not persuasive" and limited it to the patent law context. *Id.* at *34, 36-37. In an exhaustive analysis, the *NDMA* court identified "substantial recent authority denying disclosure" of litigation funding information as irrelevant outside of the patent or other special litigation scenarios[4] and refused to

---

[2]     Relevance under Rule 26(b)(1) was neither disputed nor discussed in *International Oil Trading*. The parties apparently accepted that the litigation funding agreement in that case (an involuntary bankruptcy proceeding) was relevant because the agreement may have reflected that the petitioning creditor had transferred part of his claim to his litigation funder. This fact, the alleged debtor contended, could have affected the creditor's suitability as a petitioning creditor. 548 B.R. at 829. The Bankruptcy Code imposes strict limitations on who may act as a petitioning creditor. *See* 11 U.S.C. § 303(b). The *International Oil Trading* court allowed that the transfer of part of the petitioning creditor's judgment was "central to one theory [the alleged debtor]" was prosecuting. 548 B.R. at 839.

[3]     For context, standing requirements in patent litigation are exacting, including that all co-owners in a patent be joined as plaintiffs to make a claim for infringement. *See, e.g.*, *Bushnell, Inc. v. Brunton Co.*, 659 F. Supp. 2d 1150, 1158 (D. Kan. 2009).

[4]     For example, the *NDMA* court noted some courts view litigation funding as potentially relevant in the class action context. *See* 2019 U.S. Dist. LEXIS 160051, at *36; *see also Benitez v. Lopez*, 2019 U.S. Dist. LEXIS 64532, at *5 n.1 (E.D.N.Y. Mar. 14, 2019) (noting that in the class context, external influences on settlement could bear on the adequacy of proposed class counsel); *accord Gbarabe v. Chevron Corp.*, 2016 U.S. Dist. LEXIS 103594, at *5 (N.D. Cal. Aug. 5, 2016) (allowing discovery of litigation funding agreement to assess adequacy of class representative); *Haghayeghi*, 2016 U.S. Dist. LEXIS 193963, at *4 (same).

- 14 -

1    find that such information was even "marginally relevant" to the products liability claims at issue.

2    *Id.* at \*33, 36.  The court's decision applied equally to the plaintiffs' agreements with litigation

3    funding sources and to ***all*** of the plaintiffs' communications with those sources.

4         In *Kaplan v. S.A.C. Capital Advisors, L.P.*, 2015 U.S. Dist. LEXIS 135031, at \*17

5    (S.D.N.Y. Sep. 10, 2015), a class action case, the court rejected arguments that certain "Litigation

6    Funding Documents"—including a litigation funding agreement and communications with

7    litigation funders—were relevant.  The defendant contended that the Litigation Funding

8    Documents bore on the suitability of class counsel and offered five separate ways in which the

9    funding relationship might impact the litigation.  Calling these "purely speculative," the district

10   court refused to compel production of the Litigation Funding Documents on relevance grounds.

11   *Id.* at \*17-18.

12        *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711 (N.D. Ill. 2014), is another

13   thoroughly reasoned opinion reaching the same conclusion as *NDMA*.  The defendant in that case

14   sought any agreements governing the plaintiff's funding for the suit.  *Id.* at 719.  Noting that

15   relevance is a function of the relationship between the information and the claims at issue, the

16   *Miller* court found that litigation funding arrangements could have no relevance to the plaintiff's

17   trade secret claims or the defendant's potential defenses.  *Id.* at 722-24.  Along the way, the court

18   offered an important reminder that resonates here: discovery rules "were never intended to be an

19   excursion ticket to an unlimited exploration of every conceivable matter that captures an

20   attorney's interest."  *Id.* at 721.

21        Switch offers nothing beyond mere speculation as to how any contract or communications

22   between Cobalt and any third-party litigation funding source (if there were one) is in any way

23   relevant to the claims and defenses in this action.  "Speculation does not justify discovery."

24   *NDMA*, 2019 U.S. Dist. LEXIS 160051, at \*41 (citing *Benitez*, 2019 U.S. Dist. LEXIS 64532, at

25   \*3).  The Court should deny the Motion on relevance grounds alone.

26   **C.    Switch Seeks Information Protected from Disclosure by the Attorney-Client
            Privilege and Work Product Doctrine**

27        Even if they were not irrelevant and therefore outside the scope of discovery,

28

- 15 -

1    communications and agreements with litigation funders are exempt from production under the

2    work product doctrine.  Indeed, Switch's own authority, *International Oil Trading*, says so.

3            The work product doctrine renders documents prepared in anticipation of litigation not

4    discoverable if they reflect "the mental impressions, conclusions, opinions, or legal theories of a

5    party's attorney or other representative concerning the litigation" (*i.e.*, "opinion work product").

6    Fed. R. Civ. P. 26(b)(3)(B); *see also Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 507 (S.D. Cal.

7    2003) ("Opinion work product receives nearly absolute protection.  Therefore, materials

8    containing mental impressions, conclusions, opinions, and legal theories of an attorney are

9    discoverable only in rare and extraordinary circumstances.") (quotations and citations omitted).

10           Other documents prepared in anticipation of litigation (*i.e.*, "fact work product" or

11   "ordinary work product") are discoverable only if the party seeking disclosure "shows that it has

12   substantial need for the materials to prepare its case and cannot, without undue hardship, obtain

13   their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).

14           "In determining whether documents were prepared in anticipation of litigation, the court

15   should consider whether the documents would not have been generated but for the pendency or

16   imminence of litigation."  *Kintera*, 219 F.R.D. at 507 (internal quotation omitted).

17           In Switch's cited authority, *International Oil Trading*, the bankruptcy court had little

18   difficulty concluding that the litigation funding agreement there "was work product as it was

19   entered into with the intent to facilitate litigation."  548 B.R. at 838.  The same is necessarily true

20   of all litigation funding agreements—litigation is their raison d'être.  Courts are generally in

21   accord.  *See, e.g., Odyssey Wireless, Inc. v. Samsung Elecs. Co.*, 2016 U.S. Dist. LEXIS 188611,

22   at *16-17 (S.D. Cal. Sept. 20, 2016) (finding "the district courts that have addressed this issue

23   have found this protection applicable" to litigation funding agreements and following suit);

24   *Lambeth Magnetic Structures, LLC v. Seagate Tech. (US) Holdings, Inc.*, 2017 U.S. Dist. LEXIS

25   215773, at *16 (W.D. Pa. Dec. 19, 2017) (extending work product protection to litigation funding

26   agreements); *see also NDMA*, 2019 U.S. Dist. LEXIS 160051, at *36 n.7 (D.N.J. Sep. 18, 2019)

27   ("[I]n view of the Court's ruling that plaintiffs' litigation funding is off-limits because of

28   relevancy and proportionality concerns, the Court does not have to decide if the discovery is

protected by the work-product doctrine.  However, the Court notes the weight of recent authority appears to lean in this direction."); *Securitypoint Holdings, Inc. v. United States*, 2019 U.S. Claims LEXIS 341, at *14 (Fed. Cl. Apr. 16, 2019) ("Litigation funding agreements are often considered by the federal courts to be protected by the work product doctrine or as otherwise irrelevant to the issues at hand.").

The *International Oil Trading* bankruptcy court also found that the basic terms of the litigation funding arrangement constituted opinion work product not subject to disclosure.  For example, the amount and terms of funding necessarily represent an assessment of the strength of the plaintiff's claims and potential defenses to those claims.  548 B.R. at 839.  Revealing those terms could disclose attorney mental impressions and opinion about a case.  *Id.*  On the other hand, the bankruptcy court found that evidence in the funding agreement of whether the petitioning creditor had transferred a part of the judgment by which it claimed the right to be a petitioning creditor[5] was merely fact work product and that the alleged debtor satisfied the substantial need standard to review only that portion of the agreement.  *Id.*  Accordingly, the bankruptcy court ordered the petitioning creditor to produce its litigation funding agreement subject to redaction "of payment and any terms [the petitioning creditor] reasonably believe[d] may disclose mental impressions and opinion in relation to [his] litigation with [the alleged debtor]."  *Id.*

If the basic terms of a litigation funding agreement are work product, information exchanged with an actual or potential litigation funding source about a case is *a fortiori* so.  Communications between plaintiffs and litigation funders occur because of the expectation or occurrence of litigation, making those communications by definition protected work product.  In the absence of actual or expected litigation, there is no need for litigation funding.  A funder's willingness to fund a litigation depends primarily upon the strengths and weaknesses of a plaintiff's case.  Accordingly, communications between a plaintiff and an actual or potential litigation funder necessarily center on the plaintiff's views of its case.  This is opinion work

---

[5]    See footnote 2, above, for a further discussion of the procedural posture of *International Oil Trading*.

1    product.

2          As to communications between the plaintiff and its litigation funder in *Odyssey Wireless*,

3    the district court found that they "were created because litigation was expected" and therefore

4    constituted work product.  2016 U.S. Dist. 188611, at *17.  The district court found no waiver of

5    the work product protection when the plaintiff furnished the documents to the litigation funder

6    because the disclosure "did not increase the likelihood that an adversary would come to possess

7    them." *Id.* at *21.  The disclosures were made subject to a confidentiality agreement between the

8    plaintiff and the funder and were expected to remain confidential. *Id.*  Under the peculiar facts of

9    the patent case, the district court found that the materials—which included investment proposals

10   that significantly predated the litigation—qualified for a work product exception because they

11   bore on the value of the plaintiff's patent which was at issue in the case and not ascertainable

12   from any other source. *Id.* at *22-23.

13         The *International Oil Trading* bankruptcy court similarly had no trouble concluding that

14   communications between the petitioning creditor and its litigation funder qualified as work

15   product.  It explained:

16         There is little doubt that the communications sought by [the alleged debtor] . . .
           concern "mental impressions, conclusions, opinions or legal theories."  There are
17         communications between a client, the client's attorney, and a litigation funder
           whose participation depends on assessments of the merits of litigation.  If they are
18         work product at all, they are opinion work product.

19   548 B.R. at 836.  On this basis, the bankruptcy court walled off the entire body of

20   communications between the petitioning creditor and its litigation funder and did not require the

21   petitioning creditor to make any review of its communications for the odd exchange that might

22   not qualify for work product protection.  *See id.* at 837 (allowing the possibility "that some

23   portion of the communications . . . address mundane transactional matters," but noting such

24   documents would not be relevant; therefore declining to "force [the petitioning creditor] to sort

25   through four years of correspondence . . . in order to provide [the alleged debtor] with non-

26   relevant information").

27         Recent decisions of other courts have similarly concluded that communications with

28   actual or potential sources of litigation funding qualify for work product protection.  *See, e.g.*,

1  *Viamedia, Inc. v. Comcast Corp.*, 2017 U.S. Dist. LEXIS 101852, at \*8-9 (N.D. Ill. June 30,

2  2017) (documents provided to litigation funding firms entitled to work product

3  protection); *Morley v. Square, Inc.*, 2015 U.S. Dist. LEXIS 155569, at \*10 (E.D. Mo. Nov. 18,

4  2015) (documents provided to litigation funding firms entitled to work product protection);

5  *Mondis Tech., Ltd. v. LG Elecs., Inc.*, 2011 U.S. Dist. LEXIS 47807, at \*16-17 (E.D. Tex. May 4,

6  2011) (concluding documents shared with potential funders were subject to work product

7  protection because they were prepared in anticipation of litigation for the purpose of soliciting

8  investment to facilitate litigation).

9       In addition to work product protection, some courts have concluded that attorney-client

10  privilege survives disclosure of privileged information to a litigation funder.  *See, e.g.*, *Int'l Oil*

11  *Trading*, 548 B.R. at 833-35 (finding privilege preserved under "agency exception" because

12  litigation financing was necessary to allow petitioning creditor to obtain legal advice); *Devon IT,*

13  *Inc. v. IBM Corp.*, 2012 U.S. Dist. LEXIS 166749, at \*5-6 (E.D. Pa. Sept. 27, 2012) (determining

14  communications with funders protected as work product and protected by the attorney-client

15  privilege under the common interest exception).  Indeed, Switch cites *Berger v. Seyfarth Shaw*

16  *LLP*, 2008 U.S. Dist. LEXIS 88811, at \*3 (N.D. Cal. Oct. 21, 2008), which held that privileged

17  information maintained its privileged character even after disclosure to the litigation funder.  *See*

18  Mot. at 12:25-28.

19       RFP Nos. 178 and 179 do not merely seek documents sufficient to "[i]dentify[] the

20  individual or entity paying [Cobalt's attorneys'] bills or invoices."  They seek "***any*** Documents in

21  [Cobalt's] possession or control [i]dentifying the individual or entity paying [Cobalt's attorneys']

22  bills or invoices."  Mot. at 8:25-9:2 (emphasis added).  These requests thus necessarily embrace

23  documents clearly protected from disclosure under the work product doctrine if not also the

24  attorney-client privilege.  The Court should follow the approach in Switch's cited case,

25  *International Oil Trading*, and shut down Switch's inquiry into this protected realm.[6]

26

---

[6]    To the extent the Court determines that any of the requested documents are relevant

27  (contrary to the weight of authority) and not subject to blanket work product protection (as in Switch's cited *International Oil Trading*), Cobalt requests the opportunity to assert attorney-client

28  privilege over any such documents in accordance with Rule 26(b)(5)(A).

1    Switch avers that RFP Nos. 178 and 179 are neither vague nor ambiguous and seek only

2    "documents identifying who is paying for the legal fees and costs in this case, and need no further

3    clarification." Mot. at 13:1-3. To the extent that Switch seeks *only* the identity of any litigation

4    funder, as its clarification in the Motion implies, requesting every document including the name

5    of any such funder is unduly burdensome. Should the Court determine that the source of any

6    litigation funds is relevant (contrary to the weight of authority, and even though discovery of such

7    information could lead to no further discoverable information) and not protected from disclosure,

8    the Court should order production only of such documents as are sufficient to identify any such

9    source, or, alternatively, direct Cobalt to provide a verified statement identifying any such source.

10    Similarly, if the Court determines that Switch is entitled to responses to one or more of its

11    handful of fee and funding related deposition questions that went unanswered by Messrs. Brown,

12    Devore, and Bogatz, the Court should direct the deponents to provide verified written responses

13    to those questions rather than reopening those three depositions as Switch requests. *See* Mot. at

14    14:22-26. Indeed, counsel for Switch confirmed during the September 24, 2019 meet and confer

15    that Switch would seek to reopen these depositions only because Switch believes that to be the

16    procedurally proper request, and that Switch would accept verified written answers in lieu of

17    reopened depositions. *See* Simonsen Decl., ¶ 11. Given the irrelevant and dead end nature of

18    Switch's questions, and Switch's concession that it would accept verified written answers, there is

19    no justification for imposing on Cobalt the burden and expense of reopening anyone's deposition.

20    *Contra, e.g.*, *Hologram USA, Inc. v. Pulse Evolution Corp.*, 2016 WL 3353935, at *2 (D. Nev.

21    June 10, 2016) (cited in Mot. at 14:24-25) (ordering reopened deposition where "[t]he

22    information Plaintiffs seek . . . [wa]s neither narrow nor insubstantial" and written

23    "interrogatories c[ould] not replace testimony" that the moving party sought to compel).

24    Cobalt maintains that all of these lines of inquiry are irrelevant and that counsel justifiably

25    instructed the deponents not to answer lines of inquiry aimed directly at work product and

26    privileged information. Importantly (though Switch ignores it[7]), work product *is* a proper ground

27    ─────────────────────

28    [7]    *See* Mot. at 13:17-14:4 (ignoring work product protection as a valid ground for instruction).

for instructing a witness not to answer.  *See* Fed. R. Civ. P. 30 advisory committee's note (1993); *Scentsy*, 2012 U.S. Dist. LEXIS 143633, at *5.  In *International Oil Trading*, the bankruptcy court recognized that even the most basic information about payment arrangements with a litigation funder constitutes work product.  548 B.R. at 837, 839 (denying production of communications with funder as work product; ordering production of funding agreement alone under work product exception subject to redaction of payment terms and "any terms [reasonably believed to] disclose mental impressions and opinion").

### D.   Switch Should Pay Cobalt's Legal Fees Incurred in Opposing the Motion

If the Court denies the Motion, Cobalt requests an order directing Switch to pay Cobalt's legal fees incurred in opposing the Motion in accordance with Rule 37(a)(5)(B).  Cobalt submits that the Motion was not substantially justified because all information sought therein is irrelevant and can do nothing to advance this action to an efficient and expeditious resolution. Notwithstanding its irrelevance to Switch's defenses, Cobalt's counsel offered to confirm—by verified statement as necessary—that no competitor was funding Cobalt's litigation, thereby satisfying the principal curiosity driving Switch's Motion.

If the Court grants the Motion, in whole or in part, sanctions against Cobalt are unwarranted.  Contrary to Switch's assertion, a successful motion to compel ***does not*** make a sanction mandatory under Rule 37(a)(5)(A).  *See* Mot. at 15:20-23.  Substantial justification, or other circumstances making an award unjust, permit no award of sanctions.  Cobalt submits that its opposition to the disclosure of facially irrelevant information constituting privileged and/or protected work product was and remains substantially justified.

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny the Motion and order Switch to pay Cobalt's legal fees incurred in opposing it.

//

//

//

//

1

2    Dated:  October 9, 2019                    By: *I. Scott Bogatz*
                                                I. Scott Bogatz
3                                               Nevada Bar No. 3367
                                                Kerry E. Kleiman
4                                               Nevada Bar No. 14071
                                                **REID RUBINSTEIN & BOGATZ**
5                                               Bank of America Plaza
                                                300 South 4th Street, Suite 830
6                                               Las Vegas, NV 89101
                                                Telephone:  (702) 776-7000
7                                               Facsimile:  (702) 776-7900
                                                sbogatz@rrblf.com
8                                               kkleiman@rrblf.com
9
                                                Bryan A. Merryman (*Pro Hac Vice*)
10                                              Catherine Simonsen (*Pro Hac Vice*)
                                                **WHITE & CASE LLP**
11                                              555 S. Flower Street, Suite 2700
                                                Los Angeles, CA  90071-2433
12                                              Telephone:  (213) 620-7700
                                                Facsimile:  (213) 452-2329
13                                              bmerryman@whitecase.com
                                                catherine.simonsen@whitecase.com
14
15                                              Claire DeLelle (*Pro Hac Vice*)
                                                Celia McLaughlin (*Pro Hac Vice*)
16                                              **WHITE & CASE LLP**
                                                701 Thirteenth Street, NW
17                                              Washington, DC 20005-3807
                                                Telephone:  (202) 626-3600
18                                              Facsimile:  (202) 639-9355
                                                claire.delelle@whitecase.com
19                                              cmclaughlin@whitecase.com
20
21                                              Attorneys for Plaintiff
                                                V5 TECHNOLOGIES, LLC, d/b/a COBALT
22                                              DATA CENTERS
23
24
25
26
27
28

- 22 -

1
## **PROOF OF SERVICE**

2         I hereby certify that I am employed in Las Vegas, Nevada.  I am over the age of 18 and

3   not a party to the within action.  My business address is:

4         REID RUBINSTEIN & BOGATZ
    Bank of America Plaza
5   300 South 4th Street, Suite 830
    Las Vegas, NV 89101
6

7         On October 9, 2019, I caused the foregoing document(s) to be filed via the Court's

8   CM/ECF system, which will accomplish service on all parties of record through their counsel.

9         I declare under penalty of perjury that the foregoing is true and correct.

10         Executed on October 9, 2019, at Las Vegas, Nevada.

11

12                                   *I. Scott Bogatz*
13                                   I. Scott Bogatz

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 1 -