Mark A. Hutchison (4639)
Jacob A. Reynolds (10199)
Cynthia G. Milanowski (5652)
HUTCHISON & STEFFEN, PLLC
10080 W. Alta Dr., Suite 200
Las Vegas, NV 89145
(702) 385-2500/Fax: (702) 385-2086
mhutchison@hutchlegal.com
jreynolds@hutchlegal.com
cmilanowski@hutchlegal.com

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| V5 TECHNOLOGIES, LLC d/b/a COBALT DATA CENTERS,<br><br>           Plaintiff,<br><br>v.<br><br>SWITCH, LTD., a Nevada limited liability company,<br>           Defendant. | Case No. 2:17-cv-02349-KJD-NJK<br><br>**SWITCH, LTD.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL FURTHER DEPOSITION TESTIMONY AND PRODUCTION OF DOCUMENTS RELATING TO FEES AND COSTS** |
| ALL RELATED ACTIONS | |

Defendant SWITCH LTD. ("Switch") hereby files this reply in support of its Motion to Compel Further Deposition Testimony and Production of Documents Relating to Fees and Costs. (*See* Mot. to Compel, ECF No. 126).

**1.   Introduction.**

Switch seeks to know who is funding this case and how much is being spent to fund the case as attorney fees have been requested. Switch has tried multiple times to obtain this information in any form, and has attempted to work with Cobalt to resolve this issue for several months. Over the course of discovery and even during the briefing of this motion, it has become clear that this information is relevant to more than just the case's claims and defenses. It is critical to how the Court and parties can handle the case as a whole. Cobalt is seeking to hide information that the Court itself needs in its administration of the case. Switch's Motion to Compel should be granted.

**2.      Discussion of Cobalt's Arguments.**

**A.      Switch is seeking this discovery for proper purposes.**

Cobalt asserts that this Motion is related to Switch's Request for Production No. 180, which was not cited in Switch's Motion to Compel, but Cobalt believes shows Switch's "ultimate purpose of its inquiries regarding the terms by which Cobalt retained its attorneys." (*See* Opp'n to Mot. to Compel, ECF No. 135 at 5:2-10). Though Switch obviously believes the requests are independent, Switch Replies as follows:

Request for Production No. 180 asks for documents and ESI related to any presentations about this case made by Cobalt to investors or potential investors funding this case. (*Id.* at 4-7). "Cobalt has objected to RFP No. 180 on the grounds of relevance, attorney work product, and attorney-client privilege." (*Id.* at 7-9). For the Court's information, the parties engaged in a meet and confer regarding Request for Production No. 180, and Switch provided a separate draft motion to compel on those issues. *See* Declaration of Jacob A. Reynolds, Exhibit 1; *see also* Email chain, Exhibit 2. Cobalt conceded that it would supplement its response to avoid a Motion to Compel. In its supplemented response, "Cobalt further responds that there are no responsive documents or ESI that Cobalt is withholding based on the foregoing objections." *See* Cobalt's Supplemental Response, Exhibit 3 at 2:28-3:1.

If there is any unifying point to RFP 180 and Switch's Motion to Compel (ECF No. 126), it is simply that Switch needs to know whether there are third-party funders involved in this litigation, as it goes to bias of certain witnesses.  Further, the Court should know whether there are third-party funders of this litigation for the purposes of Local Rule 7.1-1 and knowing who has a pecuniary interest in the outcome of this case.  How can the Court make sure it has no conflicts if it does not know who is funding the litigation?  Further, how does the Court or Switch protect the jury if there are unknown groups or people funding the litigation?  Extremely critical from Switch's perspective

is the fact that if there are third-party funders of this litigation, that needs to be taken into account when selecting a jury so that Switch can confirm that no unknown funder, or relative of a funder, or employee of a funder, etc., is sitting on the jury.

The ramifications of a third-party and undisclosed funder of the litigation also affect who can make decisions to settle this litigation. There are other concerns of third-party funding such as whether this is being funded by a competitor, or someone who *wants* to become a competitor to Switch. Switch would like to ensure a fair resolution of this case. It cannot do so without information regarding who has a pecuniary interest in this case. The Court cannot administer the case without this information. Unknown interested parties raise issues of undisclosed conflicts the Court and Switch cannot protect against.

Cobalt asserts that "no competitor is funding this litigation." (*Id.* at 11:27-28). This is not helpful. Even if Switch and Cobalt were in complete agreement of who Switch's competitors are, which the discovery in this case has abundantly demonstrated is not the case, Cobalt's assertions do not cover all potential conflicts that could arise. Can Cobalt also provide a declaration stating that no one is funding this litigation, and therefore has a pecuniary interest in the case, who (1) is related to another business venture that a party or witness in this case is involved with, (2) is related to the Judge and Magistrate Judge assigned to this case, or (3) is related to a potential juror in this case? Rather than have Cobalt attempt to list every type of individual and entity that *does not* have an interest in the case, it would be much more efficient and less burdensome for Cobalt to simply state who is funding this litigation.

Further, Cobalt acts as if justified and proper discovery should be set aside by a party's attorney simply asserting essentially that "there is no concern here, move on." If that was the standard, there would be no discovery rules or magistrate judges because counsel could just give assurances to the opposing party about what was "truly relevant" to the *other* party's case. There is

3

justifiably greater concern here when there is no willingness to even allow independent verification of the assertions of counsel.

**B.       Switch is willing for the Court to limit discovery on this issue.**

Cobalt suggests several ways that the Court can limit the discovery to be produced in response to this Motion to Compel, should the Court grant the Motion. (ECF No. 135 at 10:23-28, 20:5-23). Switch wishes these options had been offered in the meet and confer opportunities that Cobalt admits have occurred over several months.  However, they were not offered during multiple meet and confers, because as Cobalt made very clear, Cobalt was simply unwilling to reveal who was funding the litigation or to produce any portion of any document relating to that, or to allow any witness to answer that question.  Exhibit 1.  Not even after Cobalt's counsel was presented with the entirety of the Motion to Compel, and given time to consider it prior to a final meet and confer, did Cobalt suggest these alternatives.  Exhibit 1 at ¶3. Accordingly, at this point the Court is well within its authority to compel a full production without limitations.  Notably, Switch has gone so far in other instances to provide fully unredacted copies of documents to Cobalt's counsel "attorney's eyes only" to resolve several production disputes.  (*See* ECF No. 138-6) (email chain regarding "AEO" production). Switch would welcome that compromise at this point and have Cobalt be compelled to produce all the responsive documents.

Cobalt also argues that the language of Switch's Requests for Production 178 and 179 "necessarily embrace documents clearly protected from disclosure under the work product doctrine if not also the attorney-client privilege." (ECF No. 135 at 19:19-24). Cobalt argues that these Requests ask for "*any* Documents" identifying who is paying for the litigation. (ECF No. 126 at 8:23-9:3) (emphasis added).

Notably, if the responsive documents were privileged, then they should have been declared as such in a privilege log.  Cobalt has *recently* filed a motion to compel regarding Switch's privilege

log. (*See* ECF No. 132). Cobalt's pending motion to compel asserts Switch's privilege log is merely inadequate and therefore the documents should be disclosed in full. (*Id.* at 4:15-26). But now Cobalt wants the Court to protect it from a wholesale failure to even identify documents on its own privilege log, and not require *any* production of the documents. The blatant hypocrisy in these two contemporaneous assertions should not be lost on the Court.

Switch, and the Court, *both* need to know who is funding this case and seeking a windfall from any reward to Plaintiff. Switch should be allowed to know how the attorney fees are being incurred and how so it can calculate its potential exposure on Cobalt's claims for attorney fees and costs. Otherwise Cobalt should simply not be allowed to seek attorney fees and costs as part of the award in this case. Cobalt has still not disclosed *any* calculation of damages in this case in its disclosures or any supplement to disclosures and now fact discovery is closed. Exhibit 1 at ¶14.

**C.    Switch's Motion to Compel is timely.**

Cobalt argues that, despite being filed before the close of discovery, Switch's Motion to Compel was untimely:

> Absent a good faith explanation why Switch failed to file this Motion last February, when Cobalt first declined to provide the disputed information; or in June, when Cobalt formally refused to provide the information; or in July, when Switch acknowledged it would need to "make [its] motion," Switch's decision to hold the Motion until September 25, 2019, can be viewed only as dilatory.

(ECF No. 135 at 7:13-17).

As an initial matter, "motions to compel filed during the discovery period are rarely considered to be untimely. *See Gault*, 184 F.R.D. at 622." *See* Order ECF No. 116 at 4:17-18) (granting Cobalt's previous motion to compel against a non-party). Both parties filed motions to compel in the days leading up to the discovery deadline or on the discovery deadline itself. (*See* ECF Nos. 131, 132, 133).

In addition, Switch should not be punished for attempting all avenues of discovery and engaging in multiple meet and confer efforts prior to asking for the Court's intervention in this case.

5

Switch did not simply run to the Court every time Cobalt stated that it would not produce information regarding litigation funding. Switch attempted to obtain the information different ways—a Rule 30(b)(6) deposition, personal depositions, and requests for production. In addition, Switch engaged in the meet and confer process in good faith beginning in August and extending through September. Switch has not been dilatory, it has fulfilled its responsibilities under the Federal Rules of Civil Procedure. (*See* Order, ECF No. 111) (denying Cobalt's previous motion to compel without prejudice for failing to meet and confer).

Switch acknowledges that "any production that Switch obtains by the Motion will necessarily occur after the fact discovery cutoff deadline of September 27, 2019." (ECF No. 135 at 6:5-7). However, the discovery at issue in this motion[1] will not interfere with the scheduling of the case. Though initial expert reports are due October 25, 2019, Cobalt will not be prejudiced—it already has the information Switch is seeking, and its experts can rely on it if it is relevant to their reports. The information should not be difficult for Cobalt to obtain or produce as Cobalt has already identified the documents that would be required to be produced under the Court's order, and should not continue to be an issue when dispositive motions are due on January 24, 2020.

Therefore, Switch's motion to compel is timely and should be considered on its merits.

**D.     The sought-after discovery is relevant to the case.**

Though Request for Production No. 180 was not included in Switch's Motion to Compel, the parties' discussions regarding this request raised new relevance issues that relate to the deposition testimony from Jeff Brown, Thomas J. DeVore, and I. Scott Bogatz and Switch's Sixth Set of Requests for Production of Documents.

Cobalt was unwilling to even indicate whether it is withholding documents in response to a request for production as required under the Federal Rules of Civil Procedure 34(b)(2)(C) until confronted by a fully-drafted proposed motion to compel. After all that, Cobalt supplemented its response to indicate it was *not* withholding documents on that request. Exhibit 1 at ¶13. This

---

[1] The only discovery currently before the Court in this Motion to Compel is deposition testimony from Jeff Brown, Thomas J. DeVore, and I. Scott Bogatz and Switch's Sixth Set of Requests for Production of Documents. If and when additional discovery becomes necessary, Switch will litigate its relevance and any potential privilege issues in full, as well as the impact it will have on the case's schedule.

gamesmanship and reticence to answer even basic obligatory responses under FRCP 34(b)(2)(C), instead forcing multiple meet and confers and a drafting of entire motion to compel just to say: "there are no responsive documents or ESI" (Exhibit 3 at 2:28-3:1), should not be condoned in any way by the Court.

Further, this reticence to answer a basic question about who is funding the lawsuit has given Switch grave concerns about Cobalt's disclosures in this case. Under Local Rule 7.1-1, "attorneys for private non-governmental parties *must* identify in the disclosure statement *all* persons, associations of persons, firms, partnerships or corporations (including parent corporations) that have a direct, pecuniary interest in the outcome of the case." (Emphasis added). Cobalt's unwillingness to answer this question therefore causes great concern.

Even should the Court find that litigation funding information is not relevant to Cobalt's claims or Switch's defenses, despite Cobalt's open claim for fees and costs, the information is clearly relevant to the Court's handling of the case. The Court must know who is interested in the outcome of the litigation to protect against conflicts of interest. The information will also be relevant as the case proceeds to trial, where potential jurors must be screened for any interest in the case.

The information is also clearly relevant to Cobalt's claims and Switch's defenses, as well as the motions both parties are filing in this case. Cobalt has asserted that it is entitled to attorney's fees under 15 U.S.C. § 15 and NRS 598A.210(1) and (2). (*See* Complaint, ECF No. 1 at 3:11-13, 29:15-33:19). In addition, Cobalt's opposition to this Motion to Dismiss requests "an order directing Switch to pay Cobalt's legal fees incurred in opposing the Motion in accordance with Rule 37(a)(5)(B)." (ECF No. 135 at 21:9:10). However, there is a significant question whether Cobalt has actually "incurred" any fees or costs in this case. If a third-party is funding this case, the Court must determine whether Cobalt can be compensated for the costs and fees paid by the third-party. *See Morrison v. Comm'r*, 565 F.3d 658, 666 (9th Cir. 2009) (under 26 U.S.C. § 7430, "when a third party who has no direct interest in the litigation pays fees on behalf of a taxpayer, the taxpayer 'incurs' the fees" if he assumes "(1) an absolute obligation to repay the fees… or (2) a contingent obligation to pay the fees in the event that he is able to recover them"); *Tidewater Patent Dev. Co. v. Kitchen*, 421 F.2d 680, 681 (4th Cir. 1970) (when a third party "undertook the defense of the action and assumed

1  its management and control, and, of course, undertook the burden of compensation of counsel," it
2  could recover fees under 35 U.S.C. § 285). Should the Court grant Switch's Motion to Compel, the
3  Court may need to determine whether the third-party litigation funder should be responsible for
4  Switch's fees and costs under Federal Rule of Civil Procedure 37(a)(5)(A).

5        Cobalt has also essentially conceded that information regarding whether a competitor of
6  Switch is funding this litigation is relevant to the case. Cobalt has stated that "Switch was welcome
7  to ask any witness whether he or she—or a competitor of Switch—had a financial interest in the
8  lawsuit or was paying fees." (ECF No. 135 3:28-4:2). Cobalt has now provided a declaration from
9  Thomas DeVore stating that "No provider of any services that Switch is in the business of providing
10 is directly or indirectly funding the prosecution of this lawsuit." (*See* Decl., ECF No. 135-8). As has
11 been made abundantly clear throughout discovery in this case, Switch and Cobalt do not agree
12 regarding the services that Switch is in the business of providing. Further, it is ridiculous that Cobalt
13 relies on a defense that Switch can discover every person who is *not* funding the litigation, when the
14 much less burdensome response, *for all parties and the Court,* is to simply identify who *is* funding
15 the litigation.

16 **E.     Switch did not reach an implicit agreement to waive its relevance argument regarding
17          deposition testimonies and objections.**

18       Though Cobalt's exact argument is not clear to Switch, Cobalt appears to assert that Switch
19 has waived its ability to point out to Cobalt and the Court that relevance is not a proper bases to
20 prevent deposition testimony:

21 > Switch's relevance argument also ignores the implicit agreement
22 > counsel for the parties reached during these depositions that the
   > instructions not to answer would be honored unless and until ***Switch***
23 > obtained a ruling from the Court that Switch's unanswered questions
   > sought relevant and discoverable information.
24 > …
25 > Counsel for Switch's words and conduct in response to counsel for
   > Cobalt's instructions not to answer constitute a concession that it
26 > was—and remains—Switch's burden to obtain a ruling that Switch's
   > fees and source of payment lines of questioning were within the scope
27 > of discoverable information under Rule 26(b), before Cobalt's
28 > witnesses should be ordered to provide answers.

8

(ECF No. 135 at 13:4-19).

Switch's counsel *never* reached an "implicit agreement" that Cobalt's counsel could instruct witnesses not to answer based on relevance grounds. This argument is particularly puzzling because of the portion of the deposition transcript wherein Switch's counsel clearly states, "You're making an inappropriate objection." (ECF No. 126 at 59, 11-14; ECF No. 135 at 13:14-15). Switch did not take immediate action during the depositions because Cobalt's counsel did not rely solely on relevance objections—there were accompanying privilege objections and instructions not to answer.

As stated in the Motion to Compel, under Federal Rule of Civil Procedure 30(c), counsel could not instruct Brown, DeVore, and Bogatz to refrain from answering questions based on relevance during their depositions. (ECF No. 126 at 13:17-14:4). Therefore, even should the Court find that the litigation funding issue is irrelevant, it does not prevent the Court from finding that Brown, DeVore, and Bogatz were wrongfully instructed to not answer questions during their depositions.

**F.     The sought-after discovery is not protected by the work product privilege.**

As an initial matter, Switch did not "ignore" that work product is a proper ground to instruct a witness not to answer questions at a deposition in its Motion to Compel. (ECF No. 135 at 20:26-21:2). Though it is worth noting that the work-product doctrine was not cited during Jeff Brown's deposition—he was instructed not answer based sole on relevance and attorney-client privilege grounds. (ECF No. 126 at 2:18-5:13).

In its Motion to Compel, Switch expressly discussed whether the attorney-client privilege or work product doctrine applies to the sought-after documents. (*Id.* at 11:16-12:28). Switch then stated that "the information about those documents that is known by Brown, DeVore, and Bogatz is not privileged," specifically citing cases regarding the work-product doctrine. (*Id.* at 14:5-19). Though the work product doctrine may not be technically labeled as a "privilege," Switch used the term "privileged" to refer to both the attorney-client privilege and work product doctrine.

The cases cited by Cobalt in its opposition focus on the work product doctrine as applied to funding agreements and documents provided to litigation funders. However, case law applying to documents provided to litigation funders is no longer at issue based on Cobalt's supplement response

9

to Request for Production No. 180. Further, this is not a Motion to Compel responses to Request for Production 180. Cobalt seeks to conflate this Motion with a non-existent motion in hopes to strengthen its case, the Court should not permit this.

In addition, Cobalt does nothing to combat Switch's argument that, "[t]he work-product doctrine does not protect *factual information* from disclosure. Rather, it protects a party only from disclosing particular *documents* containing the information. To accommodate these principles, a party may propound interrogatories and take depositions to obtain the sought-after factual information." *Stern v. O'Quinn*, 253 F.R.D. 663, 687 (S.D. Fla. 2008) (emphasis in the original). "[B]ecause the work product doctrine is intended only to guard against the divulging of attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within the work product." *California Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 644 (E.D. Cal. 2014) (quoting *Garcia v. City of El Centro,* 214 F.R.D. 587, 591 (S.D.Cal.2003). Ironically, Cobalt's opposition cites a case that states, even when "the documents in dispute are protected by the attorney work-product privilege," only "deposition questions regarding mental impressions contained in the documents are barred by this doctrine. … *But questioning regarding the underlying facts and communications surrounding these documents is permitted.*" *Odyssey Wireless, Inc. v. Samsung Elecs. Co., Ltd*, No. 315CV01735HRBB, 2016 WL 7665898, at *9 (S.D. Cal. Sept. 20, 2016) (emphasis added). So even under Cobalt's own cited case law, Cobalt's instructions to not answer factual questions was erroneous.

Switch did not ask Brown, DeVore, and Bogatz to produce any litigation funding agreements at their depositions. Switch did not ask any questions regarding mental impressions contained within the documents. Switch asked the witnesses about their personal knowledge regarding who is funding this litigation. In addition, nowhere in Cobalt's opposition does it assert that Brown, DeVore, and Bogatz could have *only* learned these facts from privileged or protected sources. Switch does acknowledge that Brown stated at his deposition, "I believe I learned of this through conversations with my attorneys." (ECF No. 126 at 5:3-9). However, simply because information was conveyed during a conversation with counsel does not automatically make the work product doctrine

10

applicable, nor does it make it attorney-client privileged.  It is factual information, not attorney-client advice. In addition, Bogatz actually stated he has knowledge about the workings of the case in his personal capacity:

> Q. Who in your understanding has the authority to sign a settlement agreement in this case on behalf of the plaintiff?
>
> A. V5 --
>
> MR. MERRYMAN: I'm going to -- well, go ahead. *If you have an understanding outside of your knowledge as an attorney, in which case it would be work product, you can go ahead and answer.* If you know in your personal capacity.
>
> THE WITNESS: *As an investor, I know how decisions are made at V5.* There's a board, and decisions like this would be made by the board.

(*Id.* at 8:7-15) (emphasis added). If Bogatz similarly had knowledge of litigation funding "as an investor," this would not be covered by the work product doctrine.

Because Switch did not ask Brown, DeVore, and Bogatz to produce any litigation funding agreements at their depositions and their knowledge regarding litigation funding is not protected by the work product doctrine, the Court should order Cobalt to supplement Brown, DeVore, and Bogatz's deposition testimony on this issue.

In addition, should the Court conclude that litigation funding is relevant to the case, it should order Cobalt to produce the retainer agreements between Cobalt and White & Case, and Reid Rubenstein & Bogatz under Requests for Production Nos. 176 and 177. Cobalt's opposition to Switch's Motion to Compel does nothing to contest Switch's argument that "[r]etainer agreements are consistently held to *not* fall under the attorney-client or work product privilege." (ECF No. 126 at 12:4-16).

Should the Court determine that litigation funding documents are protected by the work-product doctrine, Switch submits that it has shown "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Odyssey Wireless, Inc. v. Samsung Elecs. Co., Ltd*, No. 315CV01735HRBB, 2016 WL 7665898, at *3 (S.D. Cal. Sept. 20, 2016) (quoting Fed. R. Civ. P. 26(b)(3)(A)). As discussed above, information regarding litigation funding is critical not only to the claims in this case, but to the

11

Court's ability to administer the case and Switch's ability to ensure a fair trial. Cobalt has refused to allow deposition testimony on this issue, making it impossible for Switch to obtain the information from another source.

**G.     The sought-after discovery is not protected by the attorney-client privilege.**

Cobalt cites case law discussing whether the "attorney-client privilege survives disclosure of privileged information to a litigation funder." (ECF No. 135 at 19:9-18). Switch's Motion to Compel does not focus on information conveyed *to* a litigation funder. It seeks factual information conveyed *about* a litigation funder. Cobalt has failed to combat Switch's argument that, "[t]he attorney-client privilege ordinarily protects neither a client's identity nor information regarding the fee arrangements reached with that client." *Reiserer v. United States*, 479 F.3d 1160, 1165 (9th Cir. 2007) (quoting *United States v. Horn*, 976 F.2d 1314, 1317 (9th Cir. 1992)).  "Information regarding the amount paid for legal services or the form of payment ordinarily does not disclose the subject matter of the professional consultation." *In re Horn*, 976 F.2d 1314, 1317 (9th Cir. 1992).  Cobalt should not be allowed to simply ignore controlling case law and hope that this Court will do the same.

The information Switch seeks regarding litigation funding is not covered by the attorney-client privilege. This is especially critical to the deposition testimony of Jeff Brown, who was instructed not to answer based solely on relevance and attorney-client privilege grounds.

**4.     Conclusion.**

The Motion should be granted and attorney fees and costs should be awarded to Switch.

DATED this 16th day of October, 2019.

                                               HUTCHISON & STEFFEN, PLLC

                                               /s/ Jacob A. Reynolds

Mark A. Hutchison (4639)
Jacob A. Reynolds (10199)
Cynthia G. Milanowski (5652)
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of Hutchison & Steffen, PLLC and that on this 16th day of October, 2019, I caused the above and foregoing document entitled **SWITCH, LTD.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL FURTHER DEPOSITION TESTIMONY AND PRODUCTION OF DOCUMENTS RELATING TO FEES AND COSTS** to be served by personally transmitting a copy of the same via the Court's CM/ECF internet system to their respective registered e-mail sites.

*/s/ Suzanne Morehead*

An employee of Hutchison & Steffen, PLLC